IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MICHAEL REILLY, WILLIAM COULMAN, and
JASON RAMSDELL, on behalf of themselves and all
other similarly situated persons,

                Plaintiffs,

   v.

CENTURY FENCE COMPANY,

                Defendant.

OPINION and ORDER

18-cv-315-jdp

---

Plaintiffs Michael Reilly, William Coulman, and Jason Ramsdell are suing defendant Century Fence Company for alleged violations of the Fair Labor Standards Act and Wisconsin labor law. It is reasonable to infer from the allegations in the complaint that plaintiffs are current or former employees of Century Fence, but the complaint does not identify plaintiffs' job titles or the nature of Century Fence's business.[1] Plaintiffs contend that Century Fence violated the law by: (1) excluding cash fringe payments from the calculation of overtime pay; (2) miscalculating overtime pay for certain weeks in which an employee worked more than eight hours in one day; (3) failing to use an employee's average straight time pay when calculating overtime pay; and (4) excluding bonuses from the calculation of overtime pay.

Two motions are before the court: (1) Century Fence's motion to dismiss claims (1) and (2) above, Dkt. 12; and (2) plaintiffs' motion for conditional certification of their FLSA claims

---

[1] The company's website says that it "installs any and all commercial / industrial applications of fence from high security military bases to your small dumpster enclosure" and "is a full service highway and roadway marking company with expertise in every aspect of pavement marking." http://centuryfence.com/.

under 29 U.S.C. § 216(b), Dkt. 17. The court will deny the motion to dismiss in most respects and grant the motion for conditional certification.

As for the motion to dismiss, Century Fence does not contend that plaintiffs' allegations are insufficient to support their legal theories. Rather, Century Fence contends that plaintiffs' legal theories are not supported by the law. The court agrees with Century Fence as to one theory plaintiffs raise regarding the interpretation of 29 U.S.C. § 207(e), as the court will explain in the analysis section. But most of Century Fence's arguments ignore the text of the relevant statutes and are simply too undeveloped to permit resolution at this stage of the case. Both sides are free to present more developed arguments in the context of a motion for summary judgment.

As for the motion for conditional certification, it appears to be undisputed that Century Fence treats all of its employees the same as to the practices that plaintiffs are challenging in this case. That is sufficient for plaintiffs to meet their low burden for receiving court permission to send out notice to other employees.

## I. MOTION TO DISMISS

**A. Failure to include cash fringe payments in overtime calculation**

This claim relates to the way Century Fence paid plaintiffs for projects governed by the Davis-Bacon Act and Wisconsin "prevailing wage" laws. Plaintiffs allege that Century Fence paid them a "cash wage, some of which Century Fence classifies to be a wage payment, and some of which Century Fence classifies to be a cash fringe payment." Dkt. 9, ¶ 17. In other words, Century Fence paid plaintiffs cash in lieu of fringe benefits. Plaintiffs contend that Century Fence violated both the FLSA and state law by excluding the payments of cash for

fringe benefits when calculating plaintiffs' regular rate of pay for the purpose of calculating the appropriate overtime rate.

   1. **FLSA claim as to projects governed by the Davis-Bacon Act**

The Davis-Bacon Act (DBA) applies to certain construction contracts with the federal government. 40 U.S.C. § 3142(a). Among other things, the DBA requires that an employee receive a minimum wage determined by the Secretary of Labor as "the prevailing wage" for the type of work performed in the state. *Id.* § 3142(b). Plaintiffs are not raising a claim under the DBA and the FLSA includes its own definition of an employee's "regular rate," 29 U.S.C. § 207(e), but the parties appear to agree that the DBA governs the way that plaintiffs' regular rate of pay should be calculated as to this FLSA claim because the underlying projects were governed by the DBA. 40 U.S.C. § 3142(e) (on DBA projects, DBA applies when "determining the overtime pay to which a laborer or mechanic is entitled under any federal law"). *See also Amaya v. Power Design, Inc.,* 833 F.3d 440, 447 (4th Cir. 2016) (concluding that definition of "regular rate" under § 3142(e) applies in the context of FLSA claims related to projects governed by the DBA).

In a lengthy provision, § 3142(e) sets out two ways that an employee's regular rate may be calculated:

> [T]he regular or basic hourly rate of pay . . . of the laborer or mechanic is deemed to be the rate computed under section 3141(2)(A) of this title, except that where the amount of payments, contributions, or costs incurred with respect to the laborer or mechanic exceeds the applicable prevailing wage, the regular or basic hourly rate of pay . . . is the amount of payments, contributions, or costs actually incurred with respect to the laborer or mechanic minus the greater of the amount of contributions or costs of the types described in section 3141(2)(B) of this title actually incurred with respect to the laborer or mechanic or the amount determined under section 3141(2)(B) of this title but not actually paid.

3

Thus, to understand § 3142(e), one must also look at § 3141(2)(A) and § 3141(2)(B). Those provisions identify what is included in the definition of "prevailing wage" under the DBA:

> (A) the basic hourly rate of pay; and
>
> (B) for medical or hospital care, pensions on retirement or death, compensation for injuries or illness resulting from occupational activity, or insurance to provide any of the forgoing, for unemployment benefits, life insurance, disability and sickness insurance, or accident insurance, for vacation and holiday pay, for defraying the costs of apprenticeship or other similar programs, or for other bona fide fringe benefits, but only where the contractor or subcontractor is not required by other federal, state, or local law to provide any of those benefits, the amount of--
>
>> (i) the rate of contribution irrevocably made by a contractor or subcontractor to a trustee or to a third person under a fund, plan, or program; and
>>
>> (ii) the rate of costs to the contractor or subcontractor that may be reasonably anticipated in providing benefits to laborers and mechanics pursuant to an enforceable commitment to carry out a financially responsible plan or program which was communicated in writing to the laborers and mechanics affected.

The parties do not articulate their arguments clearly, but they appear to agree that cash paid in lieu of fringe benefits should be included in the definition of "prevailing wage" under § 3141. The dispute is whether that cash is part of § 3141(2)(A) or § 3141(2)(B).

Plaintiffs say that any cash payment to the employee, regardless how the employer designates that cash payment, is part of the "hourly rate of pay" under § 3141(2)(A). Their argument is essentially one of process of elimination. First, they say that cash fringe payments cannot be included in § 3141(2)(B)(i) because they are not paid "to a trustee or to a third person under a fund, plan, or program." Second, they say that cash fringe payments made to an employee cannot be included in § 3141(2)(B)(ii) because they are not "set aside in an

4

account, so that under sound actuarial principles the amount set aside will be sufficient to meet the future obligation of the employer under the plan." Dkt. 20, at 5–6 (citing S. Report N. 963, at 6–7 (1964)). Because cash fringe payments are not part of § 3141(2)(B), plaintiffs say, those payments must be included in the hourly rate under § 3141(2)(A).

Turning to § 3142(e), plaintiffs say that, if cash fringe payments are included in the basic hourly rate of pay under § 3141(2)(A), then they are also included in the calculation for overtime pay under § 3142(e), *unless* the employer meets the requirements for the alternative method of calculation. That method applies only when "the amount of payments, contributions, or costs incurred with respect to the laborer or mechanic exceeds the applicable prevailing wage." *Id.* § 3142(e). In that situation, plaintiffs say, an employer may subtract cash fringe payments from the total cash paid to determine the hourly rate. In other words, an employer may not exclude cash fringe payments from the hourly rate of pay unless all the costs incurred by the employer as to an employee exceed the prevailing wage. Plaintiffs allege that Century Fence's total payments do *not* exceed the prevailing wage under the DBA, so it cannot subtract cash fringe benefits from the hourly rate.

Plaintiffs further support their argument with the interpretive canon that a statute should be construed so that no part will be rendered superfluous. *Hibbs v. Winn*, 542 U.S. 88, 101 (2004). If § 3141(2)(B) included cash fringe payments, plaintiffs say, there would be no need to create two methods of calculation under § 3142(e). The statute could simply direct employers to exclude those payments in all instances.

Plaintiffs' argument is not wholly persuasive. For one thing, it is not clear that § 3141(2)(B)(ii) should be read as requiring the employer to set aside money in an account. Plaintiffs rely on a Senate Report for this view, but they do not explain how the view is

5

supported by the text of the statute. For another thing, plaintiffs' interpretation of § 3142(e) seems to assume that cash fringe payments qualify as an "amount determined under section 3141(2)(B) of this title but not actually paid," but that seems to be in tension with their view that cash fringe payments are part of § 3141(2)(A) rather than § 3141(2)(B).

Despite the questions left unanswered by plaintiffs, the court concludes that it would be premature to dismiss this claim. Century Fence neither responds directly to any of plaintiffs' arguments about the text of the DBA nor develops its own analysis of that text. Specifically, Century Fence does not contend either that it made a "contribution" under § 3141(2)(A)(i) to a trustee or to a third person under a fund, plan, or program" or that it has made an "enforceable commitment" under § 3141(2)(B)(ii) "to carry out a financially responsible plan or program which was communicated in writing to the laborers and mechanics affected." It also does not respond to plaintiffs' reading of § 3142(e) and does not contend that its total payments to plaintiffs exceeded the DBA's prevailing wage.

Rather than explaining why the text supports its interpretation, Century Fence instead relies on administrative materials and case law from other circuits. But the court must begin with the statutory text; a regulation or other administrative guidance cannot override a statute's plain language. *Khan v. U.S.*, 548 F.3d 549, 554 (7th Cir. 2008) ("If the plain meaning of the text . . . opposes the regulation, then we stop our analysis and . . . strike . . . the regulation."). And most of the case law Century Fence cites does not address the issue raised in this case. The closest it comes is *Holloway Const. v. Wage Appeals Bd., U.S. Dep't of Labor*, 825 F.2d 1072 (6th Cir. 1987), which it cites for the first time in its reply brief. The actual holding of the case is that the DBA requires employers to pay fringe benefits for each hour of overtime that an employee works. *Id.* at 1075–76. Although the court also assumed that an employer may

exclude cash fringe payments from the calculation of the regular rate to the same extent as any other fringe benefit, *id.* at 1074, the court did not explain that assumption.

Century Fence may ultimately prevail on this claim. But in light of Century Fence's failure to engage in any analysis of the DBA's text, the court concludes that Century Fence has not shown that it is entitled to dismissal of this claim now. It is free to put forward a more developed argument in a motion for summary judgment.

### 2. Projects governed by Wisconsin "prevailing wage" laws

#### a. State law claim

Similar to the Davis-Bacon Act, Wisconsin law requires employers to a pay a "prevailing wage" on certain public works projects.[2] When an employee works overtime on those projects, the employer must pay that employee "a rate of at least 1.5 times their hourly basic rate of pay." Wis. Stat. § 103.49(2). "Hourly basic rate of pay" is defined as "the hourly wage paid to any employee, excluding any contributions or payments for health insurance benefits, vacation benefits, pension benefits and any other bona fide economic benefits, whether paid directly or indirectly." *Id.* § 103.49(1)(b).

Both sides point to § 103.49(1)(b) as supporting their respective positions. Century Fence says that the provision shows that an employer may exclude "payments" made directly to employees if the payments are for health insurance benefits. Plaintiffs focus on the phrase "bona fide economic benefits," which is defined in part as "an economic benefit for which an employer makes irrevocable contributions . . . to [a] bona fide plan, trust, program, or fund."

---

[2] Many of the laws governing Wisconsin prevailing wages were amended in January 2017. 2015 Wis. Act. 55. The parties assume that the previous versions of the laws apply to the claims in this case, so the court will make the same assumption.

7

*Id.* § 103.49(1)(am). Again, plaintiffs' argument could be clearer, but the court's understanding of the argument is that a "payment" may not be excluded from the regular rate of pay unless that payment is for a "bona fide economic benefit." *Id.* (referring to "payments for health insurance benefits, vacation benefits, pension benefits and *any other* bona fide economic benefits") (emphasis added). And a cash payment to an employee is not a "bona fide economic benefit" because it is not an "irrevocable contribution[]. . . to [a] bona fide plan, trust, program, or fund."

The court reaches the same conclusion on this claim as it did on the claim related to DBA projects. Again, Century Fence fails to respond to plaintiffs' arguments on the text but instead relies on administrative guidance and nonbinding case law, most notably *Schilling v. PGA Inc.*, No. 16-cv-202-wmc, 2018 WL 5266592 (W.D. Wis. Oct. 23, 2018). But *Schilling*'s analysis was limited to the interpretation of state labor regulations; the court did not conduct an analysis of § 103.49. So it provides limited guidance on the question before this court. In the absence of any meaningful argument from Century Fence as to the plain meaning of the statutory text, the court concludes that it would be premature to dismiss this claim.

    b. **FLSA claim**

This claim arises under § 207(a)(2)(C) and § 207(e) of the FLSA. Under § 207(a)(2)(C), an employer must pay an employee "a rate not less than one and one-half times the regular rate at which he is employed" when he works more than 40 hours in one week. Under § 207(e), "the 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee," subject to several exceptions. Plaintiffs contend that "all remuneration" includes cash fringe payments

and that no exceptions to the general rule apply, so the FLSA requires Century Fence to include those payments in the regular rate when calculating overtime on state prevailing wage projects.[3]

This claim represents an alternative theory to the above claim under Wisconsin state law, so if plaintiffs prevail on that claim, this claim is redundant. Plaintiffs' position is that, if they lose on the state-law claim, they are entitled to prevail under the FLSA instead.

Century Fence does not deny that the definition of "regular rate" under § 207(e) is broad enough to include cash fringe payments. In fact, it did not address this claim at all in its opening brief, which is reason enough to deny Century Fence's motion to dismiss the claim. In its reply brief, it questions whether § 207(e) applies to state prevailing wage projects, but it does not explain why.

Century Fence again cites *Schilling*, which concluded that Wisconsin's definition of "regular rate" controls in the context of state prevailing wage projects. 2018 WL 5266592, at *6. But the court's reasoning was simply that the "plaintiffs . . . fail to point to any support for their argument that 'regular rate of pay' necessarily includes the cash fringe under the FLSA." *Id.* In this case, plaintiffs point to the broad definition of "regular rate" in § 207(e) and the lack of any exception that applies to cash fringe payments.

It may be that Century Fence means to argue that the FLSA simply does not apply to Wisconsin prevailing wage projects, at least in this context. Because it is state law that requires a premium wage for Wisconsin prevailing wage projects, it is only state law that governs how to calculate overtime pay on that wage. But if that is Century Fence's argument, it is not supported. Century Fence cites no other situation in which an employer may disregard the

---

[3] There is no dispute that the DBA's definition of "regular rate" does not apply to those projects.

requirements of the FLSA in favor of state law. States are free to determine their own prevailing wages, but that does not excuse employers from complying with the FLSA's overtime requirements. *E.g.*, *Maddison v. Comfort Sys. USA (Syracuse), Inc.*, No. 517CV0359LEKATB, 2018 WL 679477, at *4 (N.D.N.Y. Feb. 1, 2018) (applying § 207 to state prevailing wage project); *Sobczak v. AWL Industries, Inc.*, 540 F.Supp.2d 354, 357 (E.D.N.Y. 2007) (same). *See also Walling v. Helmerich & Payne, Inc.,* 323 U.S. 37, 42 (1944) ("Even when wages exceed the minimum prescribed by Congress, the [employer] must respect the statutory policy of requiring the employer to pay one and one-half times the regularly hourly rate for all hours actually worked in excess of 40.").

Again, the court need not resolve the issue definitively now. It is enough to say that Century Fence hasn't shown that it is entitled to dismissal of the claim at this stage of the case.

**B. Offsets under the FLSA for "premium" payments**

This claim is about two related practices. First, Century Fence pays its employees a premium rate for all hours worked in excess of eight in one day. Second, Century Fence says that it takes "credit for premium pay on hours worked [more than] 8 in a day" when it calculates weekly overtime owed to an employee. Dkt. 18, at 13. Plaintiffs contend that Century Fence is taking "double credit for each hour of daily overtime paid," in violation of the FLSA. Plaintiffs are raising a similar claim under state law, but that claim is not the subject of Century Fence's motion to dismiss.

At the heart of the dispute is the interaction between 29 U.S.C. § 207(a)(2)(C), which requires employers to pay time-and-a-half for hours worked in excess of 40 over the course of one work week, and 29 U.S.C. § 207(h)(2), under which certain types of "extra compensation"

are "creditable toward overtime compensation." The type of "extra compensation" at issue in this case is identified in § 207(e)(5):

> extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee under subsection (a) or in excess of the employee's normal working hours or regular working hours, as the case may be.

The parties dispute whether Century Fence is properly applying these two provisions when calculating an employee's overtime pay.[4]

In its opening brief, Century Fence seeks dismissal of this claim in its entirety. But in its reply brief, Century Fence narrows its argument to one part of plaintiffs' claim, which relates

---

[4] Plaintiffs provide the following example of their theory in their brief:

> Take for example an employee who worked 10 hours with daily overtime pay for hours 9 and 10 Monday through Thursday, 8 hours on Friday, and 4 hours on Saturday. Under the Plaintiffs' interpretation, overtime premium pay received Monday through Thursday should be offset against the 12 hours of weekly overtime pay that are owed to the employee for working on Friday and Saturday, so long as the 8 hours of daily overtime pay qualify under §207(e)(5) through (7). Even if the 8 hours of daily overtime pay fully offsets the 8 hours of weekly overtime pay on Friday, the employee is still entitled to 4 hours of weekly overtime pay on Saturday. Under the contrary interpretation that Century Fence appears to arguing for, the employee is not entitled to any weekly overtime pay on Friday on account of 8 hours of daily overtime premium pay he received earlier in the week, while under §207(h)(2) those same 8 hours of daily overtime premium pay can be used a second time to offset overtime premium pay owed to the employee for the 4 hours of Saturday work, resulting in the employee receiving a total of 8 hours of overtime pay for 12 hours of overtime worked.

Dkt. 20, at 17.

to how Century Fence determines the rate of daily premium pay. The court will limit its analysis to that aspect of the claim.

Yet again, the parties' arguments on this issue are not a model of clarity. But it appears to be undisputed that Century Fence pays its employees a differently hourly rate depending on the particular job the employee is performing at that time. For example, plaintiffs say that Century Fence pays a higher rate for "drive time" than for "shop time." Dkt. 20, at 19. It also appears to be undisputed that Century Fence calculates an employee's daily premium rate by: (1) using the regular rate of the lowest paid job that the employee performed that day; and then (2) multiplying that rate by 1.5, regardless what job the employee is performing during the portion of the day he is working in excess of eight hours. For example, if on a particular workday an employee works for five hours on a job that pays $12 an hour and then works for five hours on a job that pays $14 an hour, Century Fence calculates the employee's premium pay for the last two hours by multiplying $12 times 1.5 for each extra hour, even though the employee was performing a job with a regular rate of $14 an hour during those two hours.

Plaintiffs do not contend that the FLSA prohibits Century Fence from calculating daily premium pay the way it does. After all, it is undisputed that FLSA requirements for overtime pay apply to hours worked in excess of 40 in a week, not to hours worked in excess of eight in a day. But plaintiffs say that Century Fence may not take credit for daily premium pay under § 207(e)(5) unless Century Fence calculates the daily premium rate using the regular rate of pay of the job that employee is actually performing at the time he or she is working in excess of eight hours. In other words, if an employee is receiving premium pay for the last two hours of a ten-hour day, Century Fence must calculate the two hours of premium pay using the rate of the job the employee is performing during those last two hours.

The textual basis for plaintiffs' argument rests entirely on the word "because" in § 207(e)(5). Specifically, in the context of this case, the daily premium pay at issue does not qualify as "extra compensation" under § 207(e)(5) unless Century Fence paid the premium "because" an employee worked more than eight hours in a day. Plaintiffs take this straightforward requirement and make a leap that is not supported by the text:

> The exemption's use of the word "because" rather than "when" shows its applicability depends on why the employer paid the premium rate for certain hours; rather than solely upon whether the premium pay was paid on hours worked after the employee had worked over 8 hours per day. By re-sequencing its employees' work hours so that the highest rated work is presumed to have been worked first (and thus paid at lower straight time rates), Century Fence paid daily premium pay to its employees on certain hours because those were the lowest paid hours worked by the employee on the day, rather than because they were worked after the employee had already worked 8 hours on the day.

Dkt. 20, at 21.

Plaintiffs' argument is simply not persuasive. As Century Fence points out, plaintiffs do not allege that Century Fence ever gave them daily premium pay for working fewer than eight hours in a day, so it makes no sense to contend that they received premium pay for any reason other than working more than eight hours. Plaintiffs' argument is not directed to *why* Century Fence offered premium daily pay, but to how Century Fence determined *how much* premium pay to offer. Because § 207(e)(5) does not impose requirements on the amount of "extra compensation" an employer must provide, plaintiffs' argument fails.

That being said, there could be scenarios in which Century Fence's method of calculation could run into problems under § 207(e)(5). For example, if an employee performed one job with a base rate of $10 an hour for five hours and then a different job with a base rate of $15 an hour for five hours, the "premium" rate the employee would receive for the last two

13

hours ($10 x 1.5 x 2 hrs) would be exactly the same rate that the employee would receive under the regular rate for the higher paid job ($15 x 2 hrs). In that situation, there would be no "extra compensation" for which Century Fence could claim credit under § 207(e)(5).

Plaintiffs do not allege that the differences in pay rates among the different types of jobs are significant enough to trigger this kind of problem. But it is not clear from either side's submissions how much "credit" Century Fence is claiming for daily premium pay. Assume a variation of the previous example, in which the first job is paid at a base rate of $11 an hour, but everything else is the same. In that situation, the employee's daily pay is only slightly more than if he had received his regular rate for both jobs—$133 ($11 x 5 hrs + $15 x 3 hrs + $11 x 2 hrs x 1.5) versus $130 ($11 x 5 hrs + $15 x 5 hrs). Thus, the "extra compensation" is only $3. The parties do not say whether Century Fence would claim a $3 credit in that scenario or an $11 credit, which is the difference between two hours of premium rate pay for the lower paying job ($33) and two hours of regular rate pay for the same job ($22).

Because the parties do not address this issue, the court cannot resolve it now. All the court can say now is that plaintiffs cannot rely on a theory that daily premium pay is categorically excluded from the meaning of "extra compensation" under § 207(e)(5) if an employer calculates the premium pay using the hourly rate for the lowest paying job that the employee worked that day. Any other issue related to this claim will have to wait for summary judgment or trial.

In its reply brief, Century Fence asks the court to "declare that Century Fence is entitled to an offset for premiums paid for hours worked above eight in a workday against weekly overtime obligations." Dkt. 22, at 3. But there is no need to declare the general principle that an employer is entitled to offset "extra compensation" in accordance with §§ 207(e)(5) and

14

(h)(2). That principle is undisputed and is clear from the text of § 207. If Century Fence is asking for a declaration that its application of the general principle is correct, that request is premature until the parties develop the relevant facts.

II. MOTION FOR CONDITIONAL CERTIFICATION

Plaintiffs' motion for conditional certification does not require extended discussion. In determining whether a class should be certified conditionally under 29 U.S.C. § 216(b), the question is whether the plaintiffs have made a "modest factual showing" that they and potential class members were victims of a common policy or plan that violated the law. *De Leon v. Grade A Constr. Inc.*, No. 16-cv-348, 2017 WL 1957537, at *2–3 (W.D. Wis. May 11, 2017); *Kelly v. Bluegreen Corp.*, 256 F.R.D. 626, 628–29 (W.D. Wis. 2009). The inquiry focuses on "whether potential plaintiffs are sufficiently similar to believe a collective action will facilitate efficient resolution of a legal dispute involving claims which share common questions and common answers." *Holmes v. Sid's Sealants, LLC*, No. 16-cv-821, 2017 WL 5749684, at *2 (W.D. Wis. Nov. 28, 20 17) (internal quotations omitted). This is a relatively liberal standard and it "typically results" in conditional certification of a representative class. *De Leon*, 2017 WL 1957537, at *2–3.

In this case, Century Fence does not deny that it treats all of its employees the same way as to issues in dispute in this case, so conditional certification is appropriate. Although Century Fence opposes plaintiffs' motion for conditional certification, it does so on the same grounds that it is seeking dismissal of plaintiffs' claims. Because the court has rejected most of those arguments for the purpose of Century Fence's motion to dismiss, they are not a ground for denying conditional certification either. Regardless, the court does not consider the merits

of the claims in the context of a motion for conditional certification. *Bitner v. Wyndham Vacation Resorts, Inc.*, 301 F.R.D. 354, 357 (W.D. Wis. 2014).

The only remaining issue is the content of plaintiffs' proposed notice.[5] Century Fence raised a number of objections in its opposition brief and plaintiffs incorporated many of those suggestions in a revised notice. Dkt. 19-1. The court approves the revised notice, with two exceptions.

First, plaintiffs should omit any reference to their theory that Century Fence violated the FLSA simply because it used an employee's lowest paid hours to calculate the employee's daily premium pay on a day that the employee worked more than eight hours. Because the court has concluded that plaintiffs do not state a claim under that theory, that theory cannot be part of the collective's claims.

Second, under the heading "Effect of Joining this Lawsuit," plaintiffs' revised notice states the following: "You will be eligible for any recovery achieved by the Plaintiffs, if any. You will also be bound by the judgment of the Court if it is unfavorable." Dkt. 19-1, at 3. For the purpose of clarity, plaintiffs should replace the above language with the following: "If you join this lawsuit, you will be bound by any judgment of the Court, whether favorable or unfavorable."

The court agrees with plaintiffs that it is not necessary, as Century Fence suggests, to include language that employees may be required to participate in the lawsuit if they join it. An employee could be required to sit for a deposition or turn over documents regardless whether she joins the lawsuit. It is also not necessary for plaintiffs to warn employees that they

---

[5] Century Fence does not object to plaintiffs' request of sending notice to all hourly employees who worked for Century Fence within the last three years, so the court approves that request.

may be responsible for a portion of Century Fence's costs if plaintiffs are not successful. Plaintiffs' revised notice states: "The representative Plaintiffs in this lawsuit have entered into a contingency fee agreement with Plaintiffs' lawyers, which means that if there is no recovery, there will be no attorney's fees or costs chargeable to you from Plaintiffs' lawyers." *Id.* Because plaintiffs' counsel have agreed to pay any costs incurred, there is no need to tell employees about the possibility of paying those costs.

ORDER

IT IS ORDERED that:

1. Defendant Century Fence Company's motion to dismiss, Dkt. 17, is GRANTED as to plaintiffs' theory that daily premium pay is categorically excluded from the meaning of "extra compensation" under § 207(e)(5) if an employer calculates the premium pay using the hourly rate for the lowest paying job that the employee worked that day. The motion is DENIED in all other respects.

2. The motion for conditional certification filed by plaintiffs Michael Reilly, William Coulman, and Jason Ramsdell, Dkt. 12, is GRANTED, except as to the theory that the court rejected above.

3. Plaintiffs may have until January 3, 2019, to send notice to the collective or show cause why they are unable to do so. Plaintiffs should give members of the collective 45 days to opt in to the collective.

Entered December 13, 2018.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge