IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MICHAEL REILLY, WILLIAM COULMAN,
JASON RAMSDELL, and JASON GRETSCHMAN,
on behalf of themselves and all other similarly situated
persons,

                    Plaintiffs,

     v.

CENTURY FENCE COMPANY,

                    Defendant.

OPINION and ORDER

18-cv-315-jdp

---

       Plaintiffs Michael Reilly, William Coulman, Jason Ramsdell, and Jason Gretschman are current or former employers of defendant Century Fence Company. Among other things, Century Fence provides road marking services to private and governmental clients. It has locations in Pewaukee and Knapp, Wisconsin, but it also performs work in Minnesota.

       Plaintiffs are suing Century Fence for failing to pay them in accordance with the Fair Labor Standards Act, Wisconsin law, and Minnesota law. The court conditionally certified claims under the FLSA in a previous order. Dkt. 23. Three motions are before the court: (1) plaintiffs' motion for class certification of state law claims under Federal Rule of Civil Procedure 23, Dkt. 86; and (2) plaintiffs' motion "to invalidate settlement agreement and release," Dkt. 88; and (3) Century Fence's motion for leave to file a surreply brief in opposition to plaintiffs' motion for class certification, Dkt. 95. Plaintiffs don't object to the surreply brief, so the court will accept the brief.

       As for the other two motions, this is the second time that plaintiffs filed both of them. The court denied the motions the first time without prejudice because both were missing important information. The supplemental briefs have provided the court with what it needs to

rule on the motions. For the reasons explained below, the court will deny the motion to invalidate the settlements and releases and grant the motion for class certification.

ANALYSIS

**A. Motion to invalidate settlements**

Plaintiffs challenge the validity of a proposed settlement and release that Century Fence sent to its employees. Specifically, Century Fence has offered employees a cash settlement in exchange for release of any claim "that Century Fence failed to pay overtime compensation on the 'cash fringe' portion of wages paid on non-prevailing wage jobs." Dkt. 78-1, at 3.[1] Plaintiffs contend that the settlements and releases are invalid for multiple reasons, including that the settlements don't fully compensate employees for past violations and that Century Fence was required to get court approval before entering into a settlement.

In a previous order, the court denied plaintiffs' motion to invalidate the settlements without prejudice because plaintiffs didn't allege that any of the named plaintiffs or any employees who opted in to the FLSA collective action signed the settlement. This raised the question whether this court has authority to invalidate (or approve) an agreement entered into with employees who aren't represented by plaintiffs' counsel and aren't parties to this case, at least not yet. In their renewed motion, plaintiffs cite *Gulf Oil Company v. Bernard*, 452 U.S. 89, 100 (1981), and *Sjoblom v. Charter Commc'ns, LLC*, No. 07-cv-451-bbc, 2007 WL 5314916, at *3 (W.D. Wis. Dec. 26, 2007), but neither case addresses the question whether an employer is barred from settling a claim with a potential class member.

---

[1] Cash fringe is the portion of wages paid in lieu of benefits.

The court concludes that it is unnecessary to decide the scope of its authority on this issue. The key dispute between the parties in their supplemental briefs is whether the settlements relate to a claim that is part of this case. Century Fence doesn't deny that the settlements are improper if they relate to potential class claims. In fact, the settlements themselves say that they are "not intended to release . . . any claims in the lawsuit *Michael Reilly et al v. Century Fence Company*, United States District Court, W.D. Case No. 18-CV-315." Dkt. 78-1. Because the court concludes that the settlements *do* relate to a potential class claim, the releases do not have any legal effect.

It is somewhat unusual for parties to dispute not just whether the plaintiffs' claims have merit but also what claims are included in the operative complaint. The confusion started when plaintiffs moved to file a third amended complaint to add a new claim. Dkt. 63. After the court denied the request as untimely and prejudicial, Dkt. 75, Century Fence circulated the settlements. Century Fence understood plaintiffs' third amended complaint to be adding a claim for an alleged failure to pay overtime compensation on the 'cash fringe' portion of wages paid on non-prevailing wage jobs, so it believed that it was entitled to settle the claims on its own when the court denied plaintiffs' motion for leave to amend their complaint.

But plaintiffs say that Century Fence misunderstands both the scope of their second amended complaint and the scope of the claim they were trying to add in their third amended complaint. Specifically, plaintiffs say that their proposed third amended complaint would have added a new claim related to prevailing wage projects. And they say that the claim about how to calculate overtime on non-prevailing wage projects was already in their second amended complaint.

The misunderstanding is not surprising. Plaintiffs have struggled throughout the course of the proceedings to clearly explain their claims. When moving for leave to file a third amended complaint, plaintiffs summarized the proposed change in a 100-word sentence that was difficult to follow:

> The Plaintiffs are seeking the Court's leave to amend the Second Amended Complaint to allege that Century Fence employees also worked and received pay on non-prevailing age projects, for the purpose of advancing the alternative claim that even if the hourly basic rate of pay used to compute Wisconsin prevailing wage overtime pay does not include cash fringe payments, Century Fence must still use the straight time pay that it paid to its employees for their work on non-prevailing wage projects, which was $40 per hour for non-foremen and $43 per hour for foremen, to compute their prevailing wage overtime pay.

Dkt. 63, at 1. However, regardless what plaintiffs were trying to accomplish with their third amended complaint, the court agrees with plaintiffs that their second amended complaint was broad enough to include the claim that is the subject of the settlements. Specifically, plaintiffs alleged in their second amended complaint that Century Fence: (1) designated some wages as "cash fringe" payments, Dkt. 62, ¶ 18; (2) did not include cash fringe payments in its calculations for overtime pay, *id.*, ¶ 22; (3) violated the Fair Labor Standards Act by failing to include cash fringe payments when computing its employees' regular rate for overtime pay, *id.*, ¶¶ 26, 41.

Plaintiffs didn't group these allegations into a separate count devoted to Wisconsin non-prevailing projects, so Century Fence's interpretation of the scope of plaintiffs' claims is understandable. But the allegations were sufficient, if only barely, to put Century Fence on notice of the claim that was the subject of the settlements. Although plaintiffs did not expressly mention non-prevailing wage projects in the complaint, it is reasonable to infer from plaintiffs' allegations that Century Fence was calculating overtime pay the same way for all projects, both

4

prevailing wage and non-prevailing wage. And although plaintiffs did not allege that the practice of excluding cash fringe payments from overtime pay calculations violated *state* law, federal pleading rules don't require a plaintiff to include all legal theories in their complaint. *See Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011) ("A complaint need not identify legal theories, and specifying an incorrect legal theory is not a fatal error.").

The bottom line is that Century Fence sent its employees proposed settlements for a claim that is part of this lawsuit. The parties don't say whether any employee has signed the settlement or accepted a payment, but the proposed settlement itself states that it doesn't release claims that are included in the case, so it isn't necessary to "invalidate" the settlements. Century Fence's employees remain free to assert the claim related to the calculation of overtime pay in this case. If plaintiffs show at the conclusion of the case that they are entitled to damages (or they obtain a class settlement), the parties may present arguments on whether and, if so, how any money already paid by Century Fence should be taken into consideration.

Plaintiffs are not asking the court to direct Century Fence to send a corrective notice to its employees. Instead, plaintiffs propose to include a correction in the class notice. The court will discuss that proposal in the section of the opinion discussing the content of the class notice.

## B. Motion for class certification

The requirements for class certification under Rule 23 are well established: (1) the scope of the class as to both its members and the asserted claims must be "defined clearly" using "objective criteria," *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015); (2) the class must be sufficiently numerous, include common questions of law or fact, and be adequately represented by plaintiffs (and counsel) who have claims typical of the class, Fed. R. Civ. P. 23(a); and (3) the class must meet the requirements of at least one of the types of class

actions listed in Rule 23(b). In this case, plaintiffs ask for certification under Rule 23(b)(3) (b)(3), which applies when "the questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

The court denied plaintiffs' first motion for class certification because the class plaintiffs proposed was too broad, because plaintiffs failed to identify what the class claims were, and because plaintiffs didn't show that they were represented by adequate class counsel. The court is persuaded that plaintiffs have adequately addressed its concerns in their renewed motion and will certify a class, but the court will modify the class definition because plaintiffs' proposal is still too broad.

## 1. Class definition and claims

Plaintiffs now identify three subclasses.[2] The first subclass includes plaintiffs Reilly, Coulman, and all hourly employees who "could have" worked on projects in Wisconsin *not* governed by "prevailing wage" laws after they worked more than 40 hours. Plaintiffs contend that Century Fence violated this subclass's rights under Wisconsin law in two ways: (1) it excluded the portion of an employee's wages designated as "cash fringe" when calculating the rate of overtime pay; (2) it didn't use an employee's average weekly wage rate when it calculated the overtime rate. Instead, it used the method employed in 29 U.S.C. § 207(g)(2), even though it didn't meet the requirements for that provision. (Although the proposed class claims arise under state law, the parties appear to agree that state law incorporates § 207(g)(2).)

---

[2] To summarize the proposed subclasses and class claims, the court relies primarily on plaintiffs' proposed class notice, Dkt. 86-1, which provides a clearer and more concise statement than their briefs.

The second subclass includes Reilly, Coulman, and all hourly employees who "could have" worked overtime on prevailing wage projects in Wisconsin. Plaintiffs contend that Century Fence violated this subclass's rights under Wisconsin law in two ways as well: (1) it excluded the portion of an employee's wages designated as "cash fringe" when calculating the rate of overtime pay; and (2) it failed to pay overtime rates when an employee worked more than 40 hours in a week *unless* the employee had already worked more than 8 hours that day or had already received 40 hours of "straight time" pay that week. In other words, plaintiffs contend that Century Fence violated the law by excluding from its overtime calculation hours for which employees had received "premium pay," which they received when they worked more than 8 hours in a day.

The third subclass includes Gretchmann and all hourly employees who "could have" worked overtime on a "prevailing wage" project in Minnesota. Plaintiffs contend that Century Fence violated this subclass's rights under Minnesota law by failing to pay the overtime rate when an employee worked more than 40 hours in a week *unless* the employee had already worked more than 8 hours that day or had already received 40 hours of "straight time" pay that week.

In their opening brief and in the proposed class notice, plaintiffs say that all of the subclasses include those employed by Century Fence since May 1, 2016, which is two years before plaintiffs filed this case. In their reply brief, plaintiffs say that the Minnesota subclass should include those employed since August 23, 2015.

### a. Inclusion of employees who didn't work overtime

Although all of plaintiffs' class claims relate to alleged failures to pay overtime, plaintiffs do not define their classes to include only those employees who *worked* overtime. Instead, they

ask the court to certify classes of employees who "could have" worked overtime during the relevant time period. By this, plaintiffs mean *any* hourly employee who worked on a Wisconsin non-prevailing wage project (for the first subclass), a Wisconsin prevailing wage project (for the second subclass), or a Minnesota prevailing wage project (for the third subclass).

Plaintiffs' class definitions are problematic because "commonality requires the plaintiffs to demonstrate that the class members have suffered the same injury." *Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481, 497 (7th Cir. 2012). The Supreme Court has made the same observation in multiple cases. *See, e.g., Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348–49 (2011); *Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 594–95 (1997); *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982). If those who didn't work overtime are included in the class, then the class members don't all share the same injury. In other cases involving wage-and-hour claims, this court has defined classes to exclude those who weren't affect by the challenged policy or practice.[3]

This is not to say that plaintiffs must prove in every case that all class members were injured at the class certification stage. For example, plaintiffs cite *Parko v. Shell Oil Co.*, 739

---

[3] *See, e.g., Schilling v. PGA Inc.*, 293 F. Supp. 3d 832, 843 (W.D. Wis. 2018) (defining class as employees "who (i) did not receive overtime pay equal to 1.5 times both their base rate of pay and their cash fringe rate, (ii) were paid overtime based on the rate of pay for the work completed during overtime hours, rather than the average straight time hourly rate earned during the workweek, or (iii) both"); *Kneipp v. Re-Vi Design, LLC,* No. 17-CV-857-SLC, 2018 WL 3998033, at *6 (W.D. Wis. Aug. 21, 2018) (defining class in part as "employees who . . . had [their] overtime pay computed using a straight time (or non-blended) rate, which was lower than the highest straight time wage rate he received during the workweek"); *Kasten v. Saint-Gobain Performance Plastics Corp.*, 556 F. Supp. 2d 941, 962 (W.D. Wis. 2008) (defining class in part as "who were not paid regular or overtime pay for time spent donning and doffing required protective gear and walking to and from their work stations").

F.3d 1083 (7th Cir. 2014), which involved a class of 150 property owners who alleged that their groundwater had been contaminated by an oil refinery. The defendants contended that the class should be limited to owners who could show both that their groundwater was contaminated from the refinery and that the contamination affected the value of their property. *Id.* at 1084. The court rejected the defendants' contention, reasoning that it "would make the class certification process unworkable; the process would require, in this case, 150 trials before the class could be certified." *Id.*

*Parko* isn't instructive in this case because no trial is needed to determine which employees worked overtime. That is a ministerial task, requiring nothing more than a review of employee time records. By plaintiffs' own assertion, there are only 75 employees who are potential class members.

These facts also distinguish another case plaintiffs cite, *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360 (7th Cir. 2015), in which the court affirmed the certification of a class of employees from twenty-six bank branches. The claim in *Bell* was that the bank was requiring employees to work off-the-clock overtime hours, but the court approved a class of all hourly employees without regard to how many hours they worked. *Id.* at 372, 380. Because there were no time records reflecting the alleged practice, *Bell* is like *Parko* because requiring the plaintiffs to prove they worked overtime before class certification would be akin to a trial-within-a-trial, requiring class members to prove their claim just to obtain certification. *See id.* at 376 ("A proposed class of plaintiffs must prove the existence of a common question, and one that predominates over individual questions, but it need not prove that the answer to that question will be resolved in its favor.").

In this case, limiting the class to employees who worked overtime doesn't require the court to consider the merits. Plaintiffs haven't identified any disputes about the number of hours they worked. Rather, plaintiffs' claims are all based on theories about how to calculate the appropriate rate of overtime pay in accordance with labor laws. Determining the number of employees who worked overtime doesn't require the court to determine whether Century Fence is properly applying overtime laws.

When a class definition is overbroad, the general rule is that the court should amend the class definition to correct the problem. *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 757 (7th Cir. 2014); *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 826 n.15 (7th Cir. 2012). *See also Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 678 (7th Cir. 2009) ("[I]f the class definition clearly were overbroad, this would be a compelling reason to require that it be narrowed."). In this case, plaintiffs have not identified any persuasive reason for including employees who didn't work overtime in the class. And the court sees no reason to send notice to employees who have no chance of obtaining a recovery. That would accomplish nothing but confusion. *See Bessy v. Per Mar Security Research Corp.*, No. 17-cv-34-wmc (W.D. Wis. Nov. 14, 2018) (observing that 400 employees opted in to collective but only 150 of those employees actually qualified for settlement because they didn't work overtime).

It appears that plaintiffs' only purpose in proposing broader classes is to avoid potential objections based on numerosity, an issue the court will discuss below. Because that isn't a valid basis for defining the class, the court will limit the classes as follows: (1) all hourly employees who worked on projects in Wisconsin not governed by prevailing wage laws after they worked more than 40 hours; (2) all hourly employees who worked overtime on prevailing wage projects

in Wisconsin; and (3) all hourly employees who worked overtime on a prevailing wage project in Minnesota.

### b. Time periods covered by the subclasses

The parties dispute two issues related to the class period. The first dispute relates to the end date for the class period. Plaintiffs ask for a class period that extends to the present; Century Fence contends that the class period should end on July 9, 2017. But the only basis for Century Fence's contention is that its "method for calculating overtime [after July 9, 2017] is well recognized." Dkt. 91, at 7. Again, the question whether Century Fence properly applied the overtime laws is not before the court. Plaintiffs contend that Century Fence's method of calculating overtime both before and after July 2017 was unlawful. And again, it is undisputed that Century Fence applied the same methods to each subclass.

A significant change in company policy could be a basis for creating subclasses for those affected before and after the change. But Century Fence neither asks for the creation of subclasses nor contends that any changes it made would affect the way that plaintiffs have grouped their subclasses and claims.[4] So the court will not alter the subclasses because of the July 2017 change.

---

[4] Century Fence doesn't clearly explain the change it made in July 2017, but the court's understanding is that it relates to the way that Century Fence calculated "premium pay" for employees who worked jobs at different pay rates on the same day. Specifically, if the employee worked more than eight hours doing multiple jobs, Century Fence would calculate the premium pay using the lowest paid job, regardless what part of the day the employee worked that job. But Century Fence stopped doing that in July 2017, and now calculates the premium rate based on whatever job the employee is performing after working eight hours in a day.

The second dispute relates solely to the Minnesota subclass. Plaintiffs originally proposed a May 2016 start date for the class period, both in their original motion for class certification and their renewed motion. But Century Fence objected to that date because Minnesota imposes a two-year statute of limitations and plaintiffs did not raise their Minnesota claim until they filed their second amended complaint on May 9, 2019. In their reply in support of their renewed motion, plaintiffs abandoned their request for a May 2016 start date, instead asking for an *earlier* start date of August 23, 2015. Plaintiffs say that an August 2015 start date is appropriate because: (1) the Minnesota prevailing wage claim in the second amended complaint relates back to the first amended complaint, which plaintiffs filed on August 23, 2015; and (2) Minnesota's statute of limitations for wage claims is three years rather than two when the violation was "willful," Minn. Stat. § 541.07(5). Although plaintiffs provide no basis for a finding that Century Fence acted willfully, they say that the court cannot determine the appropriate statute of limitations until it has determined liability.

The court rejects the first contention but accepts the second. Under Federal Rule of Civil Procedure 15(c), "[a]n amendment to a pleading relates back to the date of the original pleading" under three circumstances, none of which plaintiffs cite in their brief. Instead, plaintiffs cite *Mayle v. Felix*, 545 U.S. 644, 664 (2005), for the proposition that an amended complaint relates back to an earlier pleading if it "asserts a new legal theory . . . on facts already pled." Dkt. 93, at 12. Presumably, plaintiffs mean to rely on Rule 15(c)(1)(B), which applies when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." But plaintiffs' claim under the Minnesota law is not simply a new legal theory, and the new claim did not arise out of any conduct, transactions, or occurrences alleged in a prior pleading. Plaintiffs' previous

complaints did not even *mention* Minnesota, let alone discuss any projects in Minnesota where Century Fence failed to pay its employees the correct overtime pay. None of the plaintiffs named in the first amended complaint had worked on Minnesota projects. So the court concludes that plaintiffs' Minnesota claim doesn't relate back to the first amended complaint.

As for whether the class period should extend back either two or three years before the complaint was filed, plaintiffs don't explain why they didn't propose a three-year limitations period in either their original motion for class certification or their opening brief in support of their renewed motion. That was sloppy. But plaintiffs are correct that Minnesota law imposes a three-year limitations period for willful violations of the wage law, Minn. Stat. § 541.07(5), and the court agrees that it would be premature at this stage to determine whether the alleged violations were willful. *Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010) ("[C]ertification is largely independent of the merits.").

Century Fence doesn't contend in its surreply brief that applying the three-year limitations period would be unfairly prejudicial, so the start date for the Minnesota subclass will be three years before plaintiffs filed the second amended complaint, or May 9, 2016.

## 2. Numerosity

Plaintiffs estimate that the two Wisconsin subclasses each have 75 members and the Minnesota subclass has approximately 40 members. If accurate, those estimates are sufficient to show that "joinder of all members is impracticable" under Rule 23(a)(1). *See Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 859 (7th Cir. 2017) ("[A] forty–member class is often regarded as sufficient to meet the numerosity requirement."). But plaintiffs' estimates are based on a view that the Wisconsin subclasses include all employees who worked on Wisconsin projects and the Minnesota subclass includes all employees who worked on Minnesota projects

between May 2016 and the present. Plaintiffs haven't provided an estimate of the number of employees who actually worked overtime.

Plaintiffs' failure to provide an estimate that is tailored to their claims could be a reason for concluding that plaintiffs have failed to show that they meet the numerosity requirement. And if Century Fence had adduced evidence that many of its employees never worked overtime, the court would be inclined to deny class certification on that basis. But Century Fence hasn't done that. With one exception discussed below, Century Fence neither presented its own evidence nor challenged plaintiffs' estimates. Because Century Fence is in the best position to know how much its employees worked, it is reasonable to infer from its silence that most of them worked overtime. *Cf. Lacy v. Cook Cty., Illinois,* 897 F.3d 847, 864 (7th Cir. 2018) (class certification was appropriate even though class may have been overbroad when "[t]he defendants have not suggested how many of these individuals could not have been injured"); *Messner,* 669 F.3d at 825 (class certification was appropriate even though some class members might not have been harmed because the defendant "has given us no indication how many such individuals actually exist").

A precise number of class members isn't required: "a class can be certified without determination of its size, so long as it's reasonable to believe it large enough to make joinder impracticable and thus justify a class action suit." *Arnold Chapman* & *Paldo Sign* & *Display Co. v. Wagener Equities Inc.*, 747 F.3d 489, 492 (7th Cir. 2014). The court concludes that plaintiffs have met that standard.

Century Fence does challenge plaintiffs' estimate regarding the Minnesota subclass, but that is primarily because Century Fence contends that the class period should begin in 2017 rather than 2016, thus excluding some class members. The court has concluded that the class

period should begin on May 9, 2016, and plaintiffs' estimate of 40 class members is based on a proposed class period that begins on May 1, 2016. That small difference is not a reason to question plaintiffs' estimate.

Century Fence also says that some employees who worked on Minnesota projects are exempt from overtime laws, but it doesn't support that statement, either legally or factually, so the court declines to consider it. If it turns out that the Minnesota subclass or either of the other subclasses include only a few employees, Century Fence may move to decertify the class. *See Ricard v. KBK Servs., Inc.,* No. 15-cv-299-jdp, 2016 WL 4691608, at *1 (W.D. Wis. Sept. 7, 2016) (reconsidering certification as result of "low interest levels in the case").

### 3. Commonality, typicality, predominance, superiority

There is significant overlap in the requirements for commonality and typicality under Rule 23(a), and the requirements in Rule 23(b)(3) to show that common questions predominate and that a class action is superior to individual lawsuits. *Falcon*, 457 U.S. at 157 n.13 ("The commonality and typicality requirements of Rule 23(a) tend to merge."); *Messner*, 669 F.3d at 814 (Rule 23(b)(3) predominance requirement is "similar to Rule 23(a)'s requirements for typicality and commonality"). All of those requirements focus on the question whether the court or the factfinder can resolve issues across the class rather than through individualized determinations. *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1059 (7th Cir. 2016) ("Predominance is satisfied when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication.") (internal quotations and alterations omitted); *Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of Chi.*, 797 F.3d 426, 434 (7th Cir. 2015) (to satisfy commonality requirement, "[t]he claims must depend upon a common contention that is capable of class wide resolution"); *Spano v. The Boeing Co.*, 633 F.3d

574, 586 (7th Cir. 2011) (to satisfy typicality requirement, "there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group").

Other than the objections to the class definition, which the court discussed above, Century Fence doesn't identify any problems with commonality or typicality, and the court sees none. It appears to be undisputed that Century Fence calculates overtime the same way for each subclass. Instead of challenging commonality or typicality, Century Fence contends that class certification should be denied because plaintiffs' claims aren't supported by the law. But that is "putting the cart before the horse." *Kohen*, 571 F.3d at 676. Again, the question at the class certification stage isn't whether the class claims have merit; it is whether the court can decide the claims on a class-wide basis. *See Rizzo v. Kohn Law Firm S.C.*, No. 17-CV-408-jdp, 2018 WL 3466935, at *2 (W.D. Wis. July 18, 2018). Because it is undisputed that the court can resolve the validity Century Fence's methods of calculating overtime collectively, the court finds that there are questions of law and fact that are common to all the class members, that the names plaintiffs are raising claims that are typical of the class, that common questions predominate, and that a class action is superior to other methods of adjudication.

### 4. Adequacy

Adequacy has two components, one that relates to the named plaintiffs and one that relates to class counsel. The named plaintiff must show that his claims are not in conflict with the claims of the proposed class and that he has a sufficient interest in the outcome of the case. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). *See also Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997) ("The adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent."). Rule 23(g)(1) sets forth

four factors that a court must consider before appointing class counsel: the quality of counsel's work in the case; counsel's experience in handling similar cases; counsel's knowledge of the law; and the resources that counsel can devote to the case.

Each of the named plaintiffs is alleging that they worked overtime and were denied overtime pay, so they have a sufficient interest in the case. Century Fence hasn't identified any conflicts of interest and the court isn't aware of any, so the court finds that the named plaintiffs are adequate class representatives.

As for the adequacy of class counsel, the court has some reservations. In plaintiffs' original motion for class certification, counsel didn't address the relevant factors listed in Rule 23. Instead, he simply relied on the fact that he had been approved as class counsel in another case. In the renewed motion, counsel says that he has been litigating wage-and-hour cases for six years, that he has served as class counsel in several other cases, and that his law firm has provided adequate resources to litigates all of these cases. Dkt. 90.

The court is persuaded that counsel has the knowledge, experience, and resources necessary to litigate a class action of this relatively small size. But the court hesitates because of recurring problems with the quality of counsel's work involving both his lack of attention to important details and his failure to clearly articulate his client's claims and arguments.

The court has repeatedly expressed frustration with counsel's failure to explain his arguments and the scope of his claims. *See, e.g.*, Dkt. 23, at 5–6, 8, 12; Dkt. 52, at 2–3. This was most apparent in plaintiffs' original motion for class certification, in which counsel ignored the basic requirement in Rule 23(c)(1)(B) to identify the class claims, making it impossible for the court or Century Fence to properly evaluate the motion. *See* Dkt. 85.

The court has also commented on counsel's failure to get a firm handle on the case, stating that "enough is enough" when counsel filed his fourth complaint over the course of a year with little justification for failing to do so earlier. Dkt. 75.

The lack of attention to detail is a problem as well. As noted in this opinion, counsel waited until his reply brief of his renewed motion for class certification to contend that his Minnesota claim is governed by a three-year limitations period and should relate back to an earlier complaint. And even then, counsel did not acknowledge that he made a mistake, but instead blamed Century Fence for making "unwarranted assumptions" in its opposition brief. Dkt. 93, at 11.

These problems are a pattern in this court. There are several other cases in which in which the court has expressed concerns about counsel's adequacy. One of the more serious examples is *Schilling v. PGA, Inc.*, No. 16-cv-202-wmc (W.D. Wis. Mar. 14, 2018) (Conley, J.), Dkt. 118. In the context of considering whether to approve counsel's petition to represent a class, the court noted multiple problems with counsel's performance, including: the filing of a meritless clam, sending class members the wrong notices, failing to comply with a court order, and being sanctioned for a discovery violation. Although the court was not persuaded that the problems were serious enough to warrant disaqualification, they were "reasons for concern," and the court stated that it would "continue to monitor class counsel's actions and will not hesitate to require either substitution of counsel or the arrangement of co-class counsel, if required." *Id.* at 10–11. In this case, counsel cited his appointment in *Schilling* as evidence that the court should approve him as class counsel, but he did not acknowledge the multiple concerns that the court had in *Schilling*.

In another opinion in the same case, the court again questioned counsel's adequacy because of a series of distracting motions he filed having little to do with the merits of the case and because he continued searching for new theories of liability instead of developing the claims already in the complaint. *Id.,* Dkt. 108. The court stated that it would "not hesitate to impose sanctions next time if required to curb [counsel's] ill-advised litigation strategy." *Id.*[5]

The parties eventually reached a proposed settlement in *Schilling,* but the court twice rejected the settlement because it included overly broad releases and inaccurately summarized the class members' rights. *Id.*, Dkt.160 and Dkt. 162. The court also observed that it was "troubled" by counsel's decision to send out corrected notices without court approval and "even more troubled by the poor management and lack of documentation of the class notice process as a whole." *Id.*, Dkt. 167. The court directed counsel to "do better going forward in checking his work." *Id.*[6]

*Schilling* is the most recent and prominent example of the court's concerns with counsel, but the court has expressed concerns in other recent cases as well:

- In *Sinclar v. PGA, Inc.*, 17-cv-224-wmc (W.D. Wis. Oct. 30, 2018) (Conley, J.), Dkt. 95, the court questioned counsel's adequacy when counsel raised a frivolous contention that a collective action should not be decertified despite the failure of a single employee to opt in. Counsel attempted to rely on consent forms that employees of the same company had previously filed in another case raising different claims, even though the employees had submitted the other consents before the lawsuit at issued had even been filed. The court asked: "Why would

---

[5] Delayed attempts to change the scope of the case are common in counsel's cases. *See also Flecha v. Metal Systems, LLC*, No. 16-cv-800-bbc (W.D. Wis. Feb. 22, 2018) (Crabb, J.) (denying counsel's motion filed *after* the court resolved summary judgment, seeking to amend the complaint and amend the class definition); *Pope v. Espeseth*, No. 15-cv-486-jdp (W.D. Wis. Jan. 11, 2017) (Peterson, J.) (denying counsel's motion for leave to amend filed on the same day defendants filed their motion for summary judgment).

[6] The motion for final approval of the settlement in *Schilling* is pending.

plaintiffs' counsel ever argue for unknowing participation in a collective action?" *Id.* at 17–18.

- In *Bessy v. Per Mar Security Research Corp.*, No. 17-cv-34-wmc (W.D. Wis. Nov. 14, 2018) (Conley, J.), the court noted "voluminous" problems with counsel's motion for preliminary approval of a settlement, including: he failed to justify his attorney fee request or even identify the amount of fees he was requesting; he proposed a release that could have been interpreted as applying to employees who didn't join the class and to claims that would arise in the future; he failed to adequately explain why the proposed settlement was fair and reasonable; and the proposed class notices were confusing and contained numerous spelling and typographical errors.

- In *Boutell v. Craftmaster Painting, LLC*, No. 17-cv-317-bbc (W.D. Wis. Apr. 26, 2019) (Crabb, J.), the court initially rejected a proposed class settlement because counsel had failed to address basic questions, such as which class members were receiving awards, how much they were receiving and why; the total amount of the settlement; the amount of counsel's request for attorney fees; and whether the parties complied with the notice requirements in 28 U.S.C. § 1715.

- In *Building Trades United Pension Trust Fund, v. Howard Grote & Sons, Inc.*, No. 18-cv-812-wmc (W.D. Wis. Dec. 17, 2019) (Conley, J.), the court noted that counsel had made "rampant errors" and "rambling and confusing" arguments in his summary judgment submissions, and that he was "playing fast and loose with the record," including by: filing late documents without seeking leave of court or explaining the untimely submission; on multiple occasions, citing exhibits that didn't support the proposition counsel was citing them for; attaching the wrong exhibits to declarations; making multiple spelling errors in his proposed findings of fact; citing payroll records of individuals who weren't even the defendant's employees; and unfairly blaming the defendant for counsel's inadequate submissions.

- In *Wisconsin Masons Health Care Fund v. Sid's Sealants, LLC*, No. 17-cv-228-jdp (W.D. Wis. Feb. 14, 2019) (Peterson, J.), counsel attempted to reopen a case that had been dismissed with prejudice, seeking enforcement of a settlement agreement, but did not attempt to distinguish or even acknowledge clearly established authority that the court didn't have jurisdiction to consider the request.

Counsel has filed many cases in this district, and the court has not reviewed all of them. But the cases cited above represent a substantial percentage of the larger cases that counsel has litigated within the last few years, so the recurring problems in those cases give the court some pause in considering whether to approve counsel to represent the class.

A factor pointing in the other direction is counsel's consistent success in achieving favorable results for his clients. In nearly all of the cases cited above, and many other cases too, counsel eventually obtained a settlement for the plaintiffs. And in each case that required court approval—which is many of counsel's cases—the court ultimately found the settlement to be fair and reasonable (though sometimes counsel had to make multiple attempts to persuade the court). That is strong evidence of counsel's value to his clients and of his legal instincts in picking claims with merit. It is also worth noting that the cases counsel takes are not often large, high-value ones that would attract many lawyers. Rather, his cases often involve smaller classes with less substantial damages that might otherwise be overlooked. Based largely on counsel's record of success, the court finds that he will fairly and adequately represent the interests of the class. Also, most of counsel's blunders haven't seriously threatened his clients' interests, although they are a drain on the resources of the court and opposing counsel.

The court expects counsel to apply the feedback he has received from the judges in this district. As indicated in *Schilling*, the court will continue to monitor counsel's performance in this case and others. If counsel's deficiencies are not addressed, the court will decline to approve his continued representation in class action litigation.

### 5. Class notice

The last issue is class notice. Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Notice must clearly, concisely, and comprehensibly state: (1) the nature of the action; (2) the class definition; (3) the class claims, issues or defenses; (4) that a class member may enter an appearance through an attorney should he or she desire; (5) that the court will exclude any class member requesting exclusion;

(6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on class members, regardless of whether a member may have a stronger individual claim of liability not dependent on proof of an unofficial policy to deny overtime pay. Fed. R. Civ. P. 23(c)(2)(B).

Plaintiffs have filed a proposed class notice, Dkt. 86-1, and it generally complies with the above requirements. Century Fence didn't raise any objections to the notice, but the court will require a few changes. First, plaintiffs should amend the class definitions and class periods to reflect the changes discussed in this order. Second, plaintiffs should include a separate section in the notice that discusses the proposed settlements and releases sent by Century Fence, explaining that the settlements do not affect the employees' right to be included in the class. Although the draft notice includes a sentence about the proposed settlements, it is buried in the middle of the description of the lawsuit. Because the notices may confuse employees who received proposed settlements, that issue should be highlighted in its own section.

Four smaller changes. On the first page, plaintiffs should delete the phrase "As a member of at least two of the subclasses," so that the relevant sentence simply reads, "You may have been adversely affected by Century Fence's methodology for computing your overtime pay, which the lawsuit contends to be unlawful." The court sees no reason to inform potential class members how many subclasses they may be part of. On the second page, there is a typographical error. In the first sentence of the fourth paragraph under the heading "Description of the Lawsuit," the word "epay" should be "pay." On the third page, plaintiffs should change "If the Court finds that the lawsuit has merit, your damages will be computed by using Century Fence's time and payroll records for you" to "If the plaintiffs are successful on a claim asserted on your behalf, your damages will be computed by using Century Fence's

time and payroll records for you." Also on the third page, the plaintiffs should give potential class members 45 days rather than 30 to opt out of the class.

When plaintiffs submit their amended notice, they should identify (and justify) the amount of time they believe they need to compile a list of class members and mail out notices. The court will also give Century Fence an opportunity to object before approving the content of the notice.

ORDER

IT IS ORDERED that:

1. Defendant Century Fence Company's motion for leave to file a surreply, Dkt. 95, is GRANTED.

2. The motion filed by plaintiffs Michael Reilly, William Coulman, Jason Ramsdell, and Jason Gretschman to invalidate the settlement agreements and releases, Dkt. 88, is DENIED because the agreements by their own terms do not apply to the claims in this case.

3. The motion for class certification Dkt. 86, is GRANTED.

4. The court certifies the following three subclasses:

   a. All hourly employees who worked overtime on a project in Wisconsin not governed by prevailing wage laws between May 1, 2016, and the present;

   b. All hourly employees who worked overtime on a prevailing wage project in Wisconsin between May 1, 2016 and the present; and

   c. All hourly employees who worked overtime on a prevailing wage project in Minnesota between May 9, 2016, and the present.

5. The court certifies the following claims for class treatment:

   a. As for employees who worked on Wisconsin non-prevailing wage jobs, Century Fence violated Wisconsin law by: (1) excluding the portion of an employee's wages designated as "cash fringe" when calculating the rate of overtime pay; (2) failing to use an employee's average weekly wage rate when it calculated the overtime rate.

b. As for employees who worked on Wisconsin prevailing wage jobs, Century Fence violated Wisconsin law by: (1) excluding the portion of an employee's wages designated as "cash fringe" when calculating the rate of overtime pay; and (2) failing to pay overtime rates when an employee worked more than 40 hours in a week unless the employee had already worked more than 8 hours that day or had already received 40 hours of straight time pay that week.

c. As for employees who worked on Minnesota prevailing wage jobs, Century Fence violated Wisconsin law by failing to pay the overtime rate when an employee worked more than 40 hours in a week unless the employee had already worked more than 8 hours that day or had already received 40 hours of straight time pay that week.

6. The court appoints Yingtao Ho as class counsel.

7. Plaintiffs may have until March 18, 2020, to file an amended class notice and a proposed deadline for disseminating the notice. Century Fence may have until March 23, 2020, to file an objection.

Entered March 10, 2020.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge