IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MICHAEL REILLY, WILLIAM COULMAN,
JASON RAMSDELL, and JASON GRETSCHMAN,
on behalf of themselves and all other similarly situated
persons,

                           Plaintiffs,

v.

CENTURY FENCE COMPANY,

                           Defendant.

OPINION and ORDER

18-cv-315-jdp

---

    The basic requirements of both the Fair Labor Standards Act (FLSA) and state wage laws are relatively straightforward: employers must pay their employees a minimum hourly wage and an overtime rate of one and one-half times the employees' regular hourly rate. In many cases, the application of those basic rules is straightforward, too. But this case demonstrates how the basic requirements can become more complicated when employees work in multiple states on different jobs that are paid at different rates and are governed by other state and federal statutes in addition to the FLSA.

    The named plaintiffs in this case are current and former employees of defendant Century Fence Company, which provides pavement marking services and fencing to both public and private entities. Century Fence operates primarily in Wisconsin, but it works on projects in Minnesota as well. Plaintiffs contend that Century Fence failed to accurately calculate their overtime pay in several ways, often as a result of employees working on multiple jobs compensated at different rates of pay and governed by different statutes. Plaintiffs assert claims under the FLSA, the Wisconsin and Minnesota prevailing-wage laws, and the Wisconsin

and Minnesota wage-and-hour laws for non-prevailing-wage projects. The court has certified subclasses of employees who work in Wisconsin and Minnesota. Dkt. 96.

Both sides move for partial summary judgment. Dkt. 110 and Dkt. 114.[1] The court will deny Century Fence's motion and grant plaintiffs' motion in most respects, for the reasons explained below. The court cannot resolve plaintiffs' claims regarding the overtime rate for projects governed by the Davis-Bacon Act because neither side adequately supported its position. But it seems unlikely that there are genuinely disputed facts that would require a trial on those claims, so the court will strike the trial date and give the parties an opportunity to file supplemental briefs.

ANALYSIS

The court discerns the following core issues in the parties' briefs-in-chief:

(1) whether Century Fence must include compensation designated as "cash fringe" in calculating the employee's overtime rate;

(2) whether Century Fence must pay for overtime on prevailing-wage projects at prevailing-wage overtime rates, even if the employee did not work more than 40 hours on prevailing-wage projects;

(3) whether Century Fence can credit premium compensation paid for work in excess of eight hours a day against overtime owed for hours in excess of 40 hours a week;

(4) how Century Fence must calculate the overtime rate when the employee worked multiple jobs at different rates;

(5) whether paid travel time qualifies as hours worked under the FLSA; and

---

[1] Plaintiffs call their motion one for summary judgment, but plaintiffs did not move on all of their class claims, and they acknowledge that there are unresolved claims of the named plaintiffs. *See* Dkt. 120, ¶ 6. Plaintiffs also move for leave to file a sur-reply. Dkt. 128. Century Fence didn't oppose that motion; the court will grant it.

> (6) whether the motor carrier exemptions under the FLSA, Wisconsin law, and Minnesota law apply to this case;
>
> (7) whether the court can find as a matter of law that Century Fence did not act willfully, in violation of 29 U.S.C. § 255(a).

Both sides raised some new issues in their reply briefs, but the court has limited its consideration to issues raised in their opening briefs. *Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626, 636 (7th Cir. 2018) ("[A]rguments raised for the first time in a reply brief are waived." (internal quotation marks omitted)). The court reviewed plaintiffs' sur-reply brief, but the two issues raised in the brief—the regulatory history of Wis. Admin. Code § DWD 290.05 and the meaning of 40 U.S.C. § 3142(d)—were not useful in resolving the parties' summary judgment motions.

In its reply brief, Century Fence withdraws its motion for summary judgment on willfulness, Dkt. 126, at 3, 12, and plaintiffs didn't seek summary judgment on that issue, so the court need not address it.

With the agenda set, the court turns to the remaining issues.

**A. Cash fringe and the rate of overtime pay**

A portion of the paychecks for Century Fence's hourly employees is designated as "cash fringe," which is money paid to employees in lieu of fringe benefits. The issue in dispute is whether the cash-fringe portion of an employee's pay must be included in the employee's regular rate of pay for the purpose of determining the appropriate overtime rate of pay. To illustrate, suppose an employee worked 50 hours in a week. For the first 40 hours, her base pay was $20 an hour, and her cash fringe was $400, averaging out to $10 an hour. For the purpose of determining her overtime pay rate for the remaining 10 hours, should her regular rate of pay be calculated at $20 an hour or $30 an hour?

3

Plaintiffs contend that Century Fence was required to include the cash-fringe portion in the overtime calculation when employees worked on three different types of projects: (1) projects governed by Wisconsin prevailing-wage laws; (2) non-prevailing-wage Wisconsin projects; and (3) projects governed by the Davis-Bacon Act (DBA). Century Fence concedes that it violated the FLSA by excluding cash fringe payments from the overtime calculation in category (2). Dkt. 124, at 3, 22. So the court will grant plaintiffs' motion for summary judgment on that claim. But Century Fence denies that it was required to include pay designated as cash fringe in the regular hourly rate for Wisconsin prevailing-wage projects and DBA projects.

### 1. Wisconsin prevailing-wage projects

Both sides move for summary judgment on this claim. The Wisconsin laws in effect at the relevant time require employers to a pay a "prevailing wage" on certain public works projects. *See* Wis. Stat. §§ 66.0903, 103.49.[2] Plaintiffs contend that both the FLSA and Wisconsin law require Century Fence to include payments designated as cash fringe in the overtime calculation on such projects. The court agrees with plaintiffs' argument under the FLSA, so it isn't necessary to consider plaintiffs' state-law argument.

Plaintiffs' argument under the FLSA is straightforward. Under 29 U.S.C. § 207(a)(2)(C), an employer must pay an employee "a rate not less than one and one-half times the regular rate at which he is employed" when he works more than 40 hours in one week.

---

[2] Many of the statutes governing Wisconsin prevailing wages were repealed or amended in January 2017. 2015 Wis. Act. 55. Plaintiffs ignore this issue in their briefs, but Century Fence says that the 2009 version of the prevailing-wage laws are applicable to this case. Dkt.115, at 22 n.8. Plaintiffs don't dispute that view, and their citations appear to be consistent with it. So the court will assume that Century Fence is correct.

Under § 207(e), "the 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee," subject to several exceptions. Plaintiffs contend that the payments designated as cash fringe by Century Fence qualify as "remuneration" and don't qualify for any of the § 207(e) exceptions, so they must be included in the regular rate.

Century Fence doesn't challenge plaintiffs' interpretation of § 207(e) or otherwise argue that § 207(e) allows it to exclude cash-fringe payments from the overtime calculation. Instead, Century Fence contends that the court should look to Wisconsin law rather than federal law to determine the meaning of "regular rate of pay" when an employee works on a Wisconsin prevailing-wage project.

When Century Fence first raised this argument in its reply brief in support of its motion to dismiss, it cited no legal authority, and the court expressed skepticism: "States are free to determine their own prevailing wages, but that does not excuse employers from complying with the FLSA's overtime requirements." Dkt. 23, at 10. The court cited *Walling v. Helmerich & Payne, Inc.*, which states that, "[e]ven when wages exceed the minimum prescribed by Congress, the [employer] must respect the statutory policy of requiring the employer to pay one and one-half times the regular hourly rate for all hours actually worked in excess of 40." 323 U.S. 37, 42 (1944). It follows that employers must also follow Congress's decision on how to determine what the regular hourly rate is.

In its summary judgment briefs, Century Fence still provides no authority that supports its view. It cites 29 C.F.R. § 778.5, which acknowledges that state law may "require the payment of overtime compensation computed on bases different from those set forth in the Fair Labor Standards Act." But § 778.5 does not give employers license to disregard § 207(e)

5

in favor of a state law that would allow an employer to pay less. Century Fence overlooks another part of the same regulation that makes this clear: "Compliance with other applicable legislation does not excuse noncompliance with the Fair Labor Standards Act."

This view is consistent with case law in which courts have interpreted § 778.5 as allowing states to define "regular rate of pay" so that it is *higher* than it otherwise would be under federal law. *See, e.g, Marin v. Apple-Metro, Inc.*, No. 12CV5274ENVCLP, 2017 WL 4950009, at *19 (E.D.N.Y. Oct. 4, 2017). The cases Century Fence cites reached the same conclusion. *See Carlos Humberto Cab Siquic v. Star Forestry, LLC,* No. 13CV43, 2016 WL 1117627, at *3 (W.D. Va. Mar. 17, 2016); *Amezguita v. Dynasty Insulation, Inc.*, No. CV 10-1153 MV/CG, 2012 WL 12973893, at *4 (D.N.M. Sept. 14, 2012); *Grochowski v. Ajet Const. Corp.*, No. 97 CIV. 6269 (NRB), 2000 WL 1159640, at *6 (S.D.N.Y. Aug. 16, 2000). In other words, § 207(e) is the floor, not the ceiling.

Century Fence also says that applying § 207(e) is a "contradiction of the Supreme Court's long held tenet that there should be a presumption against preemption in areas of traditional state authority." Dkt. 115, at 14. But this isn't an issue of preemption because the court isn't holding that any aspect of Wisconsin's prevailing-wage law is invalid. Century Fence's contention is that Wisconsin law *allows* an employer to exclude payments designated as cash fringe from an employee's regular rate of pay, not that Wisconsin law *requires* employers to exclude such payments. Thus, even if Century Fence is correct about Wisconsin law (which plaintiffs dispute), following federal law doesn't require Century Fence to violate Wisconsin law. Rather, if the court were to accept Century Fence's view, it would mean that *Wisconsin* law preempts the FLSA, which would violate the Supremacy Clause. Not surprisingly, Century Fence cites no precedent for that result.

The court concludes that § 207(e) applies to Wisconsin prevailing-wage projects. Because Century Fence doesn't dispute that it failed to comply with § 207(e), plaintiffs are entitled to summary judgment on this claim.

### 2. Davis-Bacon Act projects

The DBA applies to certain construction contracts between an employer and the federal government. 40 U.S.C. § 3142(a). Among other things, the DBA requires that an employee receive a minimum wage determined by the Secretary of Labor as "the prevailing wage" for the type of work performed in the state. *Id.* § 3142(b). The DBA also includes a provision for determining an employee's regular rate of pay. *Id.* § 3142(e). Although plaintiffs' claim arises under the FLSA rather than the DBA, the parties agree that the DBA's definition is controlling on the projects at issue. *See id.* (on DBA projects, DBA applies when "determining the overtime pay to which a laborer or mechanic is entitled under any federal law"). *See also Amaya v. Power Design, Inc.*, 833 F.3d 440, 447 (4th Cir. 2016) (concluding that definition of "regular rate" under § 3142(e) applies in the context of FLSA claims related to projects governed by the DBA).

Section 3142(e) sets forth two definitions for the "regular or basic hourly rate of pay." The default definition is "the rate computed under section 3141(2)(A) of this title." 40 U.S.C. § 3142(e). But § 3142(2)(A) is simply "the basic hourly rate of pay," so it's a rather circular definition.

The second definition is more complicated, but it applies only if "the amount of payments, contributions, or costs incurred with respect to the [employee] exceeds the applicable prevailing wage." *Id.* § 3142(e). In that situation, the "regular or basic hourly rate of pay" is the amount of such payments, contributions, and costs "minus the greater of the

7

amount of contributions or costs of the types described in section 3141(2)(B) of this title actually incurred with respect to the [employee] or the amount determined under section 3141(2)(B) of this title but not actually paid." This requires a review of § 3141(2)(B), which has two parts:

> (i) the rate of contribution irrevocably made by a contractor or subcontractor to a trustee or to a third person under a fund, plan, or program; and

> (ii) the rate of costs to the contractor or subcontractor that may be reasonably anticipated in providing benefits to laborers and mechanics pursuant to an enforceable commitment to carry out a financially responsible plan or program which was communicated in writing to the laborers and mechanics affected.

Only Century Fence has moved for summary judgment on this claim. Although it devotes several pages of its brief to the DBA, its entire argument is based on an unsupported assumption that the first definition of "regular or basic hourly rate of pay" applies. In other words, Century Fence assumes that "the amount of payments, contributions, or costs incurred [by Century Fence] with respect to the [employee]" *does not* "exceed[] the applicable prevailing wage." Century Fence cites no facts to support that assumption, and plaintiffs allege the opposite, though they don't cite evidence that directly supports their allegation either. *See* Dkt. 121, at 3 (citing Dkt. 117, ¶¶ 18–21). Century Fence also assumes without explanation that "the basic hourly rate of pay" in § 3142(A) is "the basic hourly rate of pay established by the Secretary." Dkt. 115, at 7–8. The court cannot grant summary judgment to Century Fence based on unsupported assumptions, so the court will deny this part of Century Fence's motion.

Although the application of § 3142(e) is contingent in part on facts that the parties have failed to provide, it is unlikely that there are truly disputed factual issues related to liability on this claim. It would be counterproductive to send a claim to trial when it could be resolved

as a matter of law, at least on liability issues. So the court will give the parties an opportunity to file cross motions for summary judgment on this claim, and any other unresolved claim that can be decided as a matter of law before trial. On the claim relating to the DBA, the court expects the parties to: (1) provide the factual basis for any legal argument, supported by admissible evidence; (2) conduct a textual analysis of the relevant provisions of the DBA, explaining why the language supports that side's position; and (3) include *all* the arguments that support their legal position in their opening brief.

A problem with the summary judgment briefing in this case was that both sides moved the target from brief to brief, raising new issues and arguments, so the parties were often talking past each other. In the parties' supplemental briefing, opposition briefs will be limited to responding to the other side's arguments. The court will set a deadline that gives the parties an opportunity to first engage in settlement negotiations, which the court encourages.

Unfortunately, the need for additional briefing means that the trial will need to be postponed. So the court will strike the trial date and related deadlines, and will reset them, if necessary, after resolving the parties' cross motions.

## B.  Hours that qualify for overtime pay at prevailing rates

During any given workweek, an employee may work on projects that are governed by prevailing-wage laws and projects that aren't. If such an employee perform works on a prevailing-wage project when she has already worked more than 40 hours in a week but fewer than 40 hours *on a prevailing-wage project*, what should her rate of overtime pay be?

Consider an employee who works 30 hours on a non-prevailing-wage project and then 20 hours on a prevailing-wage project. Plaintiffs contend that such an employee is entitled under both Wisconsin and Minnesota law to receive overtime pay on the last 10 hours of work

at the prevailing-wage overtime rate. Century Fence contends that it is not required to pay overtime at prevailing-wage rates until the employee has worked 40 hours on a prevailing-wage project, but it doesn't clearly explain what rate it currently pays employees in the situation identified above. Regardless, the court concludes that plaintiffs are entitled to summary judgment under both Wisconsin and Minnesota law.

### 1. Wisconsin prevailing-wage projects

Under Wis. Stat. §§ 66.0903(4) and 103.50(2), employees who work "in excess of the prevailing hours of labor" must be paid "at a rate of at least 1.5 times his or her hourly basic rate of pay." "Prevailing hours of labor" means "10 hours per day and 40 hours per week." Wis. Stat. § 103.49(1)(c).

Plaintiffs say that the definition of "prevailing hours of labor" isn't limited to hours of labor on a prevailing-wage project, so the employee should receive the prevailing-wage overtime rate if she is working on a prevailing-wage project at the time she exceeds 40 hours of work, regardless whether all of the previous 40 hours was on a prevailing-wage project. Century Fence disagrees, saying that the definition of "prevailing hours of labor" must be construed in conjunction with § 103.50(2), which states that the prevailing wage must be paid to a "person performing the work described in sub. (2m)." Section 103.50(2m), in turn, describes the projects covered by the prevailing-wage law.

The court agrees with Century Fence that different provisions of the prevailing-wage law should be construed together. *See Voice of Wisconsin Rapids, LLC v. Wisconsin Rapids Pub. Sch. Dist.*, 2015 WI App 53, ¶ 9, 364 Wis. 2d 429, 437, 867 N.W.2d 825, 828 ("[W]e read the text as part of a whole; in relation to the language of surrounding or closely-related

statutes." (internal quotation marks omitted)). But doing so doesn't support Century Fence's position.

Section 103.50(2) makes it clear that an employee isn't entitled to the prevailing wage unless she is working on a prevailing-wage project at that time. But plaintiffs aren't contending otherwise. Under their interpretation, employees will receive the prevailing-wage overtime rate only when they are working on a prevailing-wage project. For example, if an employee works 40 hours on a prevailing-wage project, and then 10 more hours on a non-prevailing-wage project, the employee will receive the non-prevailing-wage overtime rate.

But § 103.50 says nothing about the type of work that the employee must perform while accumulating 40 "prevailing hours of labor." And, as plaintiffs point out, the definition of "prevailing hours of labor" doesn't include such a qualifier either, so the court declines to read one in. This conclusion is consistent with *Bakkestuen v. Lepke Holdings LLC*, 2019 WI App 15, ¶ 25, 386 Wis. 2d 351, 927 N.W.2d 157 (nonprecedential), in which the court of appeals upheld the circuit court's determination that the Wisconsin prevailing-wage law required the employer to pay an employee the prevailing-wage overtime rate if the employee worked more than 40 hours, regardless whether the employee had worked more than 40 hours on a prevailing-wage project.

Century Fence identifies no alternative interpretation that is consistent with the relevant statutes. It says that an employer may calculate the overtime rate in this situation by "applying either the averaging/blended rate method or the rate in effect method." Dkt. 124, at 15. Century Fence doesn't clearly explain what it means by this or how its approach would work in practice. In any event, it provides no support for its view, either in the statute or in case law. So the court concludes that plaintiffs are entitled to summary judgment on this claim.

11

### 2. Minnesota prevailing-wage projects

Under Minn. Stat. § 177.44 subd. 1, an employee "doing or contracting to do all or part of the work [on a prevailing-wage project] may not be permitted or required to work longer than the prevailing hours of labor unless the [employee] is paid for all hours in excess of the prevailing hours at a rate of at least 1-1/2 times the hourly basic rate of pay of the [employee]." Under Minn. Stat. § 177.42 subd. 4, "[t]he prevailing hours of labor may not be more than eight hours per day or more than 40 hours per week."

Again, the court agrees with plaintiffs that the plain language of the prevailing-wage law doesn't require that all of an employee's 40 hours come from work on a prevailing-wage project. Century Fence points out that § 177.44 applies only to employees working on a prevailing-wage project, but this is the same argument that Century Fence raised in the context of the Wisconsin prevailing-wage law, and it fails for the same reason. Plaintiffs are asking for overtime at prevailing-wage rates only when they are working on a prevailing-wage project, and § 177.44 doesn't impose limitations on the type of work that an employee must perform before she exceeds 40 hours. So plaintiffs are entitled to summary judgment on this claim.

### C. Offsets for premium pay

Century Fence pays its employees at the overtime rate if they work more than eight hours in a day, even when the law doesn't require it, a practice it calls "premium pay." But if an employee works more than 40 hours in a week, Century Fence takes credit for any premium pay when calculating overtime hours.[3]

---

[3] Neither side included a proposed finding of fact about the precise language of Century Fence's premium pay policy, and it doesn't appear that either side filed a copy of it. But plaintiffs quote the policy in their brief: "All hours worked over 8 per day must be paid at overtime rates, but any hours paid at overtime rates are excluded when determining whether the employee reached 40 hours worked for the week." Dkt. 111, at 26. Century Fence doesn't dispute this language

For example, if an employee worked ten hours a day, Monday through Thursday, she would qualify for eight hours of premium pay at the time-and-a-half rate (two hours each day). But if she worked an additional ten hours on Friday, the first eight hours wouldn't qualify as overtime hours, even though the employee had already exceeded 40 hours. The employee would receive a total of ten hours of time-and-a-half pay for the week (eight hours of premium pay and two hours of overtime pay).

Plaintiffs contend that Century Fence's offsets violate both Wisconsin and Minnesota law. Specifically, they say that an employee in the above situation should receive eight hours of premium pay as well as ten hours of overtime pay, for a total of 18 hours at the overtime rate. Both sides move for summary judgment on these claims.

### 1. Wisconsin claim

Plaintiffs rely on Wis. Stat. §§ 66.0903(4)(a) and 103.50(2), which require that employees be "paid for all hours worked in excess of the prevailing hours of labor at a rate of at least 1.5 times" their "hourly basic rate of pay."[4] The court agrees with plaintiffs that Century Fence's policy violates these laws.

The key phrase is "all hours." Under the terms of the premium-pay policy, employees are not paid overtime rates for hours worked in excess of 40 until those hours also exceed the number of hours for which the employee received premium pay. In the example above, Century Fence would pay hours 41 through 48 at the regular rate of pay rather than the overtime rate.

---

in its reply brief.

[4] Plaintiffs complicate this issue unnecessarily by adding a confusing argument about how Century Fence's policy interacts with Wis. Stat. § 109.03. *See* Dkt. 111, at 26–27. Because this claim can be resolved in a much more straightforward manner, it isn't necessary to consider plaintiffs' § 109.03 argument.

Century Fence points to no statutory authority for doing that. The Wisconsin prevailing-wage law does not include a provision similar to 29 U.S.C. § 207(e)(5) and (h)(2), under which certain types of "extra compensation" are "creditable toward overtime compensation." So although Century Fence isn't required under Wisconsin law to give its employees premium pay for working more than eight hours in a day, its decision to provide that premium pay doesn't excuse its obligation under Wisconsin law to pay its employees at the overtime rate for *all* hours worked in excess of 40.

### 2. Minnesota claim

Plaintiffs' argument under Minnesota law is similar to its argument under Wisconsin law. Plaintiffs cite Minn. Stat. § 177.44 subd. 1, which requires that employees be "paid for all hours in excess of the prevailing hours at a rate of at least 1-1/2 times the hourly basic rate of pay." This statute is worded almost identically to §§ 66.0903(4)(a) and 103.50(2), and Century Fence points to no Minnesota statute that allows employers to take credit for extra compensation provided for earlier hours worked when calculating overtime pay.

As plaintiffs point out, the Minnesota Supreme Court addressed a similar issue in *Matter of Minnesota Living Assistance, Inc.*, 934 N.W.2d 300 (Minn. 2019). The employer in that case paid its employees using a split-day plan, meaning that the first 5.5 scheduled hours of each 16-hour workday were paid at one rate of pay and the remaining 10.5 scheduled hours were paid at 1.5 times that rate. *Id.* at 301. The employer used the same plan even after an employee had worked more than 48 hours, which is the state statutory threshold for receiving overtime pay, or 1.5 times the regular rate. Minn. Stat. § 177.25 subd. 1.

Similar to Century Fence, the employer in *Minnesota Living Assistance* contended that it was permitted under § 177.25 to "pay[] employees time-and-a-half before an employee has

worked more than 48 hours and then credit[] those payments toward the payments it would otherwise be required to pay." 934 N.W.2d at 304. The court rejected this argument, holding that § 177.25 subd. 1 "requires employers to pay their employees at least time-and-a-half wages for all hours worked after the first 48 hours of a given workweek, regardless of whether the employee received time-and-a-half compensation during the first 48 hours of employment in that workweek." The court relied on the plain language of the statute, which requires payment at overtimes rates when an employee works "in excess of" 48 hours. *Minnesota Living Assistance*, 934 N.W.2d at 304. The court also noted that the statute includes no language authorizing an employer to credit payments made to employees for their first 48 hours of work toward payments made for work in excess of 48 hours. *Id.* at 305.

Century Fence says that *Minnesota Living Assistance* is distinguishable because it involved an interpretation of Minnesota's general wage-and-hour law rather than the Minnesota prevailing-wage law and because Century Fence's "premium pay" policy is different from the split-day plan at issue in the other case. But neither distinction is meaningful. Both § 177.25 subd. 1 and § 177.44 subd. 1 require payment at overtime rates when the employer works in "excess of" a certain number of hours, and neither statute authorizes an employer to use pay earned for previous hours as a "credit" towards overtime pay. Century Fence says that a "split-day" plan doesn't involve paying a premium for true "overtime work" like Century Fence's policy does. But even if that's true, it's irrelevant to the reasoning of *Minnesota Living Assistance*. The important point is that an employer must pay its employees at overtime rates for all hours worked in excess of the relevant threshold, without regard to the rate that the employer paid for work before the employee reached that threshold. Century Fence's policy violates § 177.44 subd. 1, so plaintiffs are entitled to summary judgment on this claim.

15

### D. Method of calculating the overtime rate for employees who work at multiple jobs with different rates

Century Fence pays its employees different rates for different kinds of work. For example, work at the job site is compensated at a higher rate than travel between sites. When an employee who performs more than one type of job works more than 40 hours in a week, at what rate should her overtime be calculated? Before July 10, 2017, Century Fence, calculated the employee's overtime rate based on the lowest-paying job she performed that day. Since July 10, 2017, Century Fence has paid overtime based on the regular rate of pay of whatever job the employee is performing at the time she is accumulating overtime pay. This is called the "rate in effect" method of calculation.

Plaintiffs contend that both of Century Fence's methods of calculation are unlawful under the FLSA. Century Fence concedes that the method it used before July 10, 2017, violates the FLSA, Dkt. 115, at 16, and it doesn't oppose plaintiffs' summary judgment motion on that issue. Dkt. 124, at 3. But it contends that the rate-in-effect method is lawful and that it properly used that method of pay.

The rate-in-effect method is addressed in § 207(g)(2), and it applies to "an employee performing two or more kinds of work for which different hourly or piece rates have been established." In that situation, the employer may use the rate-in-effect method to calculate the overtime rate *if* the employer meets three other requirements:

(1) the employee and employer have an agreement to use the rate-in-effect method;

(2) "the employee's average hourly earnings for the workweek exclusive of [certain] payments described [elsewhere in the section] are not less than the minimum hourly rate required by applicable law"; and

(3) "extra overtime compensation is properly computed and paid on other forms of additional pay required to be included in computing the regular rate."

16

29 U.S.C. § 207(g).

The FLSA itself doesn't explain how to calculate overtime for an employee working at multiple hourly rates if the employer doesn't meet these requirements, but the regulations say that the employer must use a weighted average of the employee's different rates. *See* 29 C.F.R. § 778.115; *see also Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 596 (2d Cir. 2007) ("[T]he weighted average method of determining the regular rate [is] properly calculated by adding all of the wages payable for the hours worked at the applicable shift rates and dividing by the total number of hours worked."). The parties appear to accept the weighted average method as the appropriate alternative.

Plaintiffs raise only one issue under § 207(g)(2) in their motion for summary judgment, which is that Century Fence isn't entitled to use the rate-in-effect method for either Wisconsin projects (both prevailing wage and non-prevailing wage) or DBA projects because it violated requirement (3) above by excluding payments designated as cash fringe from the regular rate when calculating overtime. Century Fence doesn't deny that it is prohibited from using the rate-in-effect method if it erred in excluding payments designated as cash fringe from the regular rate. The court has concluded that Century Fence did err in the context of employees working on Wisconsin projects, so the court will grant plaintiffs' motion for summary judgment on those claims. The claim regarding cash fringe payments on DBA projects remains unresolved, so the court will defer a decision on the question whether Century Fence was entitled to use the rate-in-effect for employees working on DBA projects.

### E. Drive time and the motor carrier exemption

Plaintiffs seek summary judgment on two other issues, contending that: (1) paid travel time of Century Fence's employees qualifies as hours worked under the FLSA; and (2) the

motor carrier exemptions under the FLSA, Wisconsin law, and Minnesota law do not apply to this case. But Century Fence denies that it has ever asserted either issue, and plaintiffs cite no evidence to the contrary. So the court will deny this aspect of plaintiffs' motion as moot.

ORDER

IT IS ORDERED that:

1. Plaintiffs' motion for leave to file a surreply brief, Dkt. 128, is GRANTED.

2. Plaintiffs' motion for partial summary judgment, Dkt. 110, is GRANTED in part and DENIED in part. The motion is GRANTED on the following issues and DENIED in all other respects:

    a. Defendant Century Fence violated the FLSA by excluding payments designated as cash fringe from the overtime rate on Wisconsin prevailing-wage projects and Wisconsin non-prevailing-wage projects.

    b. Century Fence violated the Wisconsin prevailing-wage law by failing to compensate employees working on prevailing-wage projects at prevailing-wage overtime rates when they worked more than 40 hours in a workweek, but fewer than 40 hours on a prevailing-wage project.

    c. Century Fence violated the Minnesota prevailing-wage law by failing to compensate employees working on prevailing-wage projects at prevailing-wage overtime rates when they worked more than 40 hours in a workweek, but fewer than 40 hours on a prevailing-wage project.

    d. Century Fence violated the Wisconsin prevailing-wage law by taking credit for "premium pay" when it calculated the pay rate for hours worked in excess of 40 on prevailing-wage projects.

    e. Century Fence violated the Minnesota prevailing-wage law by taking credit for "premium pay" when it calculated the pay rate for hours worked in excess of 40 on prevailing-wage projects.

    f. Century Fence violated the FLSA by using an employee's lowest paying job to calculate the overtime rate when an employee worked multiple jobs at different rates.

    g. Century Fence violated the FLSA by using the rate-in-effect method for calculating overtime for Wisconsin prevailing-wage projects and Wisconsin non-prevailing-wage projects.

3. Century Fence's motion for partial summary judgment, Dkt. 114, is DENIED.

4. The parties may have until April 30, 2021, to file cross motions for summary judgment on plaintiffs' claims relating to overtime pay on Davis-Bacon Act projects, and any other unresolved claim that can be decided as a matter of law before trial. Each side may have until May 14, 2021, to file a response. No replies.

5. The trial date and all other related deadlines are STRUCK. The court will reset the schedule after resolving the parties' supplemental cross motions for summary judgment.

Entered March 22, 2021.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge