IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MICHAEL REILLY, WILLIAM COULMAN,
JASON RAMSDELL, and JASON GRETSCHMAN,
on behalf of themselves and all other similarly situated
persons,

                            Plaintiffs,

v.

CENTURY FENCE COMPANY,

                            Defendant.

OPINION and ORDER

18-cv-315-jdp

---

The plaintiffs in this certified class and collective action are current and former employees of defendant Century Fence Company. The parties dispute numerous issues about how Century Fence should calculate its employees' overtime rate of pay under different circumstances. Plaintiffs raise claims under the Fair Labor Standards Act, Wisconsin law, and Minnesota law.

In a previous summary judgment opinion, the court resolved several issues as a matter of law, including the following:

- Century Fence violated the FLSA by excluding payments designated as cash fringe from the overtime rate on Wisconsin prevailing-wage projects and Wisconsin non-prevailing-wage projects.

- Century Fence violated the Wisconsin and Minnesota prevailing-wage laws by failing to compensate employees working on prevailing-wage projects at prevailing-wage overtime rates when they worked more than 40 hours in a workweek, but fewer than 40 hours on a prevailing-wage project.

- Century Fence violated the Wisconsin and Minnesota prevailing-wage laws by taking credit for "premium pay" when it calculated the pay rate for hours worked in excess of 40 on prevailing-wage projects.

- Century Fence violated the FLSA by using an employee's lowest paying job to calculate the overtime rate when an employee worked multiple jobs at different rates.

- Century Fence violated the FLSA by using the rate-in-effect method for calculating overtime for Wisconsin prevailing-wage projects and Wisconsin non-prevailing-wage projects.

Dkt. 139.

The court allowed the parties to file supplemental cross-motions for partial summary judgment on whether Century Fence must include cash fringe payments in the overtime rate on projects that don't apply the FLSA's method for calculating that rate. For the reasons explained below, the court concludes that Century Fence is entitled to summary judgment on plaintiffs' claims that Century Fence violated the Davis-Bacon Act and Wisconsin prevailing-wage laws by excluding cash fringe payments from the overtime rate. The court also concludes that the new claims plaintiffs raised in their supplemental briefs are outside the scope of this case. The case will proceed to trial on the issues that remain in dispute, primarily related to damages.

ANALYSIS

A. Cash fringe and the rate of overtime pay

The primary issues that remain in dispute on liability relate to Century Fence's practice of including in some of its employees' paychecks a "cash fringe," which is money paid to employees in lieu of fringe benefits. Century Fence contends that the overtime rate should be calculated on a pay rate that doesn't include the cash fringe payments. Plaintiffs disagree, but their position is more complicated, as the court will discuss below.

In the summary judgment opinion, the court concluded that the FLSA requires Century Fence to include cash fringe payments when calculating the overtime rate. Dkt. 139, at 4–7. This is because the FLSA defines the "regular rate" from which overtime is calculated to include "all remuneration," with several exceptions that don't include cash fringe payments. But this conclusion didn't resolve the parties' entire dispute because some of Century Fence's employees worked on projects governed by the Davis-Bacon Act (DBA), a federal prevailing-wage law that has its own method for calculating overtime pay. And not all members of the state-law class are also members of the FLSA collective, so some class members must rely on Wisconsin law's method for calculating overtime pay. The parties' supplemental briefs address both the DBA and the Wisconsin prevailing-wage law.

1.  **Davis-Bacon projects**

The DBA applies to certain construction contracts between an employer and the federal government. 40 U.S.C. § 3142(a). Among other things, the DBA requires that an employee receive a minimum wage determined by the Secretary of Labor as "the prevailing wage" for the type of work performed in the state. *Id.* § 3142(b).

The DBA was enacted in the 1930s to protect local contractors who were losing bids on federal projects to "outside contractors . . . who recruited labor from distant cheap labor areas." S.R. Rep. No. 88-963 (1964), *as reprinted in* 1964 U.S.C.C.A.N. 2339, 2340. In the 1960s, Congress amended the DBA to allow employers to credit the cost of fringe benefits toward an employer's obligation in meeting the minimum prevailing wage. The reason was that fringe benefits are a form of wages and that employers who weren't providing them "enjoy an unfair advantage in bidding on Federal and federally assisted construction projects" because those employers "are now able to enter lower bids than the local employers who maintain adequate

3

wage standards." *Id.* at 2344. So now an employer may meet the minimum prevailing wage by making payments in cash to the employee, by paying for fringe benefits, or through a combination of both. 40 U.S.C. § 3142(d).

In this case, Century Fence meets the minimum wage requirement with two types of cash payments, one that is identified as an employee's hourly wage and one that is identified as the "fringe rate," or cash in lieu of fringe benefits. Century Fence also makes contributions to its employees' insurance and retirement plans, but it doesn't rely on those contributions to meet the DBA minimum wage requirement. *See* Dkt. 157, ¶¶ 1–2 and Dkt. 160, ¶ 2.

Plaintiffs accept that Century Fence is paying the minimum prevailing wage under the DBA. But plaintiffs contend that Century Fence is incorrectly calculating the overtime rate for DBA projects. The parties assume both that the DBA doesn't include a private right of action and that an employee may sue under the FLSA to enforce the DBA's overtime provision. There is conflicting authority on both issues. *Compare McDaniel v. University of Chicago*, 548 F.2d 689 (7th Cir.1977) (concluding that the DBA implies a private right of action), *with Lewis v. Gaylor, Inc.*, 914 F. Supp. 2d 925, 926 (S.D. Ind. 2012) (declining to follow *McDaniel* after concluding that it is inconsistent with subsequent Supreme Court cases), *and Amaya*, 833 F.3d 440, 445 (concluding that DBA violations can be enforced under FLSA), *with Grochowski v. Phoenix Const.*, 318 F.3d 80, 87 (2d Cir. 2003) ("[P]laintiffs' attempt to use the FLSA to circumvent the procedural requirements of the DBA must fail."). Because the parties don't contest these issues, the court will assume that a claim under the FLSA is the appropriate vehicle for enforcing overtime violations under the DBA.

The parties' supplemental briefs address two issues on this claim: (1) whether § 3142(e) allows Century Fence to exclude its cash fringe payments from the regular rate of pay when

4

calculating the overtime rate; and (2) whether Century Fence may assert an affirmative defense under 29 U.S.C. § 259 for relying in good faith on federal agency guidance that interprets § 3142(e) to exclude cash fringe payments from the overtime rate. The court concludes that Century Fence prevails on the first issue, so it isn't necessary to consider the affirmative defense.

There is no dispute that § 3142(e) allows an employer to exclude its costs for fringe benefits from the overtime calculation under some circumstances. And it appears that plaintiffs agree that Century Fence could exclude the cost of benefits from the overtime rate if Century Fence purchased all of its employees' fringe benefits directly. But, as will be discussed below, the analysis becomes more complicated when an employer pays cash in lieu of fringe benefits or pays some cash for benefits while also making some contributions toward benefits. Neither side cites any case law that considers the issues in dispute, so the court must conduct its own analysis of the statutory text.

Section 3142(e) doesn't include just one method for determining an employee's overtime rate. Rather, in a long and convoluted sentence, the provision sets forth two alternative methods that an employer must follow, depending on the circumstances:

> In determining the overtime pay to which a laborer or mechanic is entitled under any federal law, the regular or basic hourly rate of pay (or other alternative rate on which premium rate of overtime compensation is computed) of the laborer or mechanic is deemed to be the rate computed under section 3141(2)(A) of this title, except that where the amount of payments, contributions, or costs incurred with respect to the laborer or mechanic exceeds the applicable prevailing wage, the regular or basic hourly rate of pay (or other alternative rate) is the amount of payments, contributions, or costs actually incurred with respect to the laborer or mechanic minus the greater of the amount of contributions or costs of the types described in section 3141(2)(B) of this title actually incurred with respect to the

5

> laborer or mechanic or the amount determined under section 3141(2)(B) of this title but not actually paid.

For the purpose of this case, the question is whether Century Fence's cash fringe payments are included in the "regular or basic hourly rate of pay." If they are, then those payments must be included in the overtime calculation; if they aren't, Century Fence can exclude them when calculating overtime.

The default definition for "regular or basic hourly rate of pay" in § 3142(e) is "the rate computed under section 3141(2)(A) of this title." *Id*. But the rate in § 3142(2)(A) is simply "the basic hourly rate of pay," so it's a rather circular definition.

The second definition is more complicated, but it applies only if "the amount of payments, contributions, or costs incurred with respect to the [employee] exceeds the applicable prevailing wage." *Id.* § 3142(e). In its opening brief, Century Fence assumes that the default definition applies without explaining why. In their opening brief, plaintiffs contend that Century Fence has conceded that "the amount of payments, contributions, or costs" it "incur[s] with respect to [its employees] exceeds the applicable prevailing wage," and they cite testimony of Century Fence's corporate representative to support that contention. Dkt. 149, at 4 and Dkt. 157, ¶ 2. Specifically, the representative answered "yes" in response to a question whether Century Fence's total payments on behalf of an employee will always exceed the minimum wage required by the DBA. Dkt. 53 (McChesney Dep. 27:5–28:4). This is because Century Fence meets its prevailing-wage obligations through the two types of cash payments described above, but it also makes contributions to employees' benefit plans, so the total amount it spends on an employee is more than the prevailing wage. In its response brief, Century Fence doesn't challenge plaintiffs' contention or the evidence on which they rely.

6

Instead, Century Fence says that it should prevail even if the second definition applies. Dkt. 158, at 4. So the court will accept plaintiffs' argument and apply the second definition.

Under the second definition, the "regular or basic hourly rate of pay" is "the amount of payments, contributions, or costs actually incurred with respect to the [employee] minus the greater of the amount of contributions or costs of the types described in section 3141(2)(B) of this title actually incurred with respect to the [employee] or the amount determined under section 3141(2)(B) of this title but not actually paid." This definition for the regular or basic hourly rate of pay has two parts. First, the employer determines its total payments, contributions, and costs that it makes on behalf of an employee. Second, the employer subtracts from that total either the amount of its § 3141(2)(B) contributions and costs or "the amount determined under section 3141(2)(B) of this title but not actually paid," whichever amount is greater.

Determining an employer's contributions and costs requires a review of § 3141(2)(B), which discusses contributions and costs separately:

> (i) the rate of contribution irrevocably made by a contractor or subcontractor to a trustee or to a third person under a fund, plan, or program; and
>
> (ii) the rate of costs to the contractor or subcontractor that may be reasonably anticipated in providing benefits to laborers and mechanics pursuant to an enforceable commitment to carry out a financially responsible plan or program which was communicated in writing to the laborers and mechanics affected.

Section 3141(2)(B) also says that the contributions and costs must be for "bona fide fringe benefits" such as health insurance or a pension.

Plaintiffs contend that the cash payments Century Fence makes to employees in lieu of fringe benefits don't qualify as contributions under § 3141(2)(B)(i) because that cash is paid

directly to the employee rather than to a fund, plan, or program. And they don't qualify as costs under § 3141(2)(B)(ii) because they don't involve an "enforceable commitment to carry out a financially responsible plan or program." In its response brief, Century Fence concedes that the portion of its employees' paycheck that it designates as cash fringe doesn't qualify as contributions or costs under § 3141(2)(B), Dkt. 158, at 3, so the court need not consider that issue further.

This leaves the question of whether the cash fringe payments are included in "the amount determined under section 3141(2)(B) of this title but not actually paid." The parties' positions on that question are a bit surprising. For reasons it doesn't explain, Century Fence simply ignores the question. But plaintiffs argue persuasively that the cash fringe payments *are* included in the "amount determined." Specifically, plaintiffs say that the "amount determined under section 3141(2)(B)" refers to the amount determined by the Secretary as the prevailing fringe rate, or, in other words, the amount of an employee's paycheck that is dedicated to fringe benefits for the purpose of complying with the prevailing wage requirement. And, plaintiffs say, the phrase "not actually paid" means that the employer didn't pay that amount *as a contribution or cost* under § 3141(2)(B).

The court agrees with this view. Other portions of the statute refer to "the wages the Secretary of Labor determines to be prevailing" and "the prevailing wage determinations of the Secretary of Labor," 40 U.S.C. § 3142(b) and (d), supporting a view that the "amount determined" is a reference to the portion of the prevailing-wage determination that is devoted to fringe benefits.

The phrase "as a contribution or cost" doesn't follow the phrase "not actually paid" in the statute, but the clause wouldn't make sense if "not actually paid" meant "not actually paid

8

at all." There would be no point to determining the hourly rate by subtracting a cost that the employer didn't incur. And it makes sense to read the clause to mean "not actually paid as a contribution or cost" because the provision is referring to § 3141(2)(B), which is about contributions and costs. Neither side cites any authority construing the relevant portion of the § 3142(e), but the above is a sensible reading, and it's not clear what else the clause could mean. Century Fence doesn't offer an alternative.

Applying this construction, the court concludes that an employer applying the second definition may exclude from the regular hourly rate the larger of the following two things: (1) its contributions and costs to a plan; or (2) the cash payments made to an employee in lieu of contributions and costs to a plan. There is no explanation in the text of the statute, its legislative history, or case law for why an employer would be permitted to subtract contributions and costs *or* cash fringe payments from the overtime rate when its total payments, costs and contributions exceed than the prevailing wage. But it may be related to a concern that employers would otherwise avoid paying a higher overtime rate by designating a disproportionate share of wages as cash fringe rather than the hourly rate. *See* 1964 U.S.C.C.A.N. 2339, 2344 (Senate report discussing concerns about "the possibility that this provision might be used to avoid compliance with the act").

As it turns out, plaintiffs' argument ultimately favors *Century Fence*, not plaintiffs. This is because § 3142(e) allows Century Fence to exclude its cash fringe payments from the regular rate of pay so long as those payments are larger than its § 3141(2)(B) costs and contributions. This is consistent with both Department of Labor regulations and legislative history indicating that the DBA allows employers to subtract cash fringe payments from the regular hourly rate, at least under some circumstances. *See* 29 C.F.R. § 5.32(c)(1) (in "some cases," a "cash

9

equivalent [for fringe benefits] would also be excludable in computing the regular or basic rate under the Federal overtime laws"); 1964 U.S.C.C.A.N. 2339, 2345 (§ 3142(e) allows employers to deduct "fringe benefits [paid] in cash . . . under certain conditions . . . in arriving at the basic hourly rate for overtime purposes"). Plaintiffs haven't adduced any evidence that Century Fence's costs and contributions are larger than its cash fringe payments, so the court will grant Century Fence's summary judgment motion on this claim.

Plaintiffs suggest in their brief that Century Fence should be prohibited from excluding its *costs and contributions* from the regular hourly rate if those are smaller than the cash fringe payments. But plaintiffs' complaint didn't raise that claim. *See* Dkt. 62. Rather, plaintiffs focused exclusively on Century Fence's cash fringe payments, so the issue is outside the scope of this case, and it is too late to raise the issue for the first time now. In any event, plaintiffs submit no evidence one way or the other about whether Century Fence's cash fringe payments or its costs and contributions are larger. Plaintiffs have the burden to prove their claim, and "[w]hen there is no evidence concerning a critical fact, . . . the allocation of the burden of production of evidence becomes critical." *Metzl v. Leininger*, 57 F.3d 618, 622 (7th Cir. 1995). Plaintiffs haven't met their burden, so the court will dismiss this claim.

### 2. Wisconsin prevailing-wage projects

Wisconsin law previously required employers to pay a "prevailing wage" on certain public works projects. Many of the laws governing Wisconsin prevailing wages were amended or repealed in January 2017, *see* 2015 Wis. Act. 55, but the parties agree that the pre-2017 version of the laws apply in this case.[1] The parties also agree that Wis. Stat. 103.50, which

---

[1] Plaintiffs cite to the 2013 version of the statutes and Century Fence cites to the 2009 version, but it doesn't appear that there were any changes to relevant provisions between 2009 and

applied to highway projects, is the relevant prevailing-wage law. Under § 103.50(2), if an employee worked overtime, he or she was to be paid "at a rate of at least 1.5 times his or her hourly basic rate of pay." In defining the "hourly basic rate of pay," § 103.50(1)(b) adopted the definition in § 103.49(1)(b): "the hourly wage paid to any employee, excluding any contributions or payments for health insurance benefits, vacation benefits, pension benefits and any other bona fide economic benefits, whether paid directly or indirectly."

Plaintiffs' primary argument is that cash fringe payments must be included in the hourly basic rate of pay because they don't qualify as a "bona fide economic benefit," which is defined in part as "an economic benefit for which an employer makes irrevocable contributions . . . to [a] bona fide plan, trust, program, or fund." Wis. Stat. § 103.49(1)(am). Plaintiffs say that cash fringe payments don't qualify as bona fide economic benefits because they aren't an irrevocable contribution to a plan, trust, program, or fund.

This court rejected an identical argument (made by the same counsel) about Wis. Admin. Code DWD § 290.05 and Wis. Admin. Code DWD § 290.01, which adopt the same definitions of "hourly basic of rate of pay" and "bona fide economic benefit" as § 103.49(1)(b) and (am):

> [T]he categories of payments or contributions excluded from "hourly basic rate" under Wis. Admin. Code § 290.01(9) does not appear to be limited by the definition of bona fide economic benefits under § 290.01(3). As set forth above, hourly basic rate encompasses § 290.01(3) payments made both directly or indirectly to employees, whereas the definition of bona fide economic benefits appears to be limited to payments made directly to a "bona fide plan, trust program or fund."

---

2013.

11

*Schilling v. PGA Inc.*, No. 16-cv-202-wmc, 2018 WL 5266592, at *4 (W.D. Wis. Oct. 23, 2018).

The court reaches the same conclusion in this case. If the court were to construe "hourly basic rate of pay" as excluding only things that meet the statutory definition of "bona fide economic benefits," key aspects of § 103.49(1)(b) would be rendered superfluous. Specifically, "bona fide economic benefits" involve "irrevocable contributions," but § 103.49(1)(b) refers to "contributions *or* payments," and those payments may be made "*directly* or indirectly." Thus, the statute contemplates that direct cash payments to the employee "for" a fringe benefit may be excluded from the regular hourly rate, in addition to contributions paid indirectly to the employee through a trust, program, or fund. *See* Wis. Admin. Code § DWD 290.05 ("[C]ash payments for bona fide economic benefits may be excluded in computing the overtime rate . . . ."). As Century Fence points out, that interpretation of § 103.49(1)(b) is consistent not just with this court's precedent, but also with guidance published by the Department of Workforce Development, which states that "the amount specified for fringe benefits on the prevailing wage rate determination is required to be paid on all hours worked but not at time and one-half." Dkt. 153, at 28. That guidance may not be binding, but it confirms the court's own interpretation of the law.

Plaintiffs also contend that § DWD 290.05, which elaborates on the overtime rules in §§ 103.49 and 103.50, prohibits Century Fence from excluding cash fringe payments from the overtime rate. The argument relies on the statement in § DWD 290.05 that "the rate upon which the overtime premium is calculated" cannot "be less" than any of three things: (1) "the amount determined by the department as the hourly basic rate of pay"; (2) "the employee's normal hourly basic rate of pay"; or (3) "the straight time cash payment made to the" employee.

Plaintiffs say that (1) is the "hourly basic rate shown on the prevailing wage determination," (2) is "the employee's rate of pay when working on non-prevailing wage projects," and (3) is all of the cash payments an employee receives, including the cash fringe payments. Dkt. 149, at 18. Plaintiffs reach this conclusion from two premises: (1) § DWD 290.05 rests on an assumption that there may be circumstances under which the "straight time cash payment" is larger than the hourly rate shown on the prevailing-wage determination and the non-prevailing-wage hourly rate; and (2) the "straight time cash payment" could be larger than those two things only if the "straight time cash payment" includes cash fringe payments. From this, plaintiffs conclude that cash fringe payments must be included in the overtime rate.

Plaintiffs' argument has multiple problems. First, plaintiffs' reliance on § DWD 290.05 as a basis for interpreting the prevailing-wage law seems inconsistent with a contention in a different section of their brief that the court shouldn't defer to agency legal conclusions. Dkt. 159, at 24 (citing *Tetra Tech Inc. v. Wisconsin Department of Revenue*, 2018 WI 75 ¶3, 382 Wis. 2d 496, 914 N.W.2d 21, for the proposition that "Wisconsin courts no longer defer to agency interpretations of the statutes and regulations that they administer"). Any deference in this case seems particularly inappropriate because the term "straight time cash payment" doesn't appear in § 103.49 or § 103.50, so it's not clear what the statutory basis for it is. In fact, the term doesn't appear in *any* Wisconsin statute or any other regulation. And § DWD 290.05 doesn't define the term. For this reason, the court in *Schilling* struggled with interpreting the phrase, though the court ultimately determined it didn't have to because plaintiffs' counsel (again, the same counsel in this case) conceded during oral argument that the reference to "straight time cash payment" did "not advance their theory that defendant was required to

13

include the cash fringe in the overtime premium calculation." *Schilling*, 2018 WL 5266592, at *5. Plaintiffs' counsel doesn't explain why they changed their mind in this case.

Second, plaintiffs provide no support for their contention that including cash fringe in "straight time cash payments" is the only way that the payments could be larger than the two other rates identified in the regulation. As defendants note, plaintiffs ignore the possibility that other types of payments such as bonuses or hazard pay could be included. Whatever the phrase might mean, plaintiffs haven't shown that it overrides the plain language of § 103.49(1)(b), as the court has construed it, which is that direct cash payments for fringe benefits may be excluded from the overtime rate. The court will grant Century Fence's motion for summary judgment on this claim as well.

Plaintiffs also contend that Wis. Stat. § 103.02 and Wis. Admin. Code § DWD 274.03 prohibit Century Fence from excluding cash fringe benefits from the overtime calculation on Wisconsin prevailing-wage projects. Dkt. 149, at 11–14. But that regulation and statute govern nonprevailing-wage projects, and plaintiffs don't explain why they would apply to prevailing-wage projects. "The general rule of statutory construction in Wisconsin where two statutes relate to the same subject matter is that the specific statute controls over the general statute." *Oneida Cty. v. Sunflower Prop II, LLC*, 2020 WI App 22, ¶ 19, 392 Wis. 2d 293, 306, 944 N.W.2d 52, 58 (internal quotation marks and alterations omitted).

In their supplemental response brief, plaintiffs contend for the first time that they are challenging the overtime rate when they are engaging in activities outside the prevailing-wage law, such as driving time, and they cite new evidence to show they performed such work. Dkt. 159, at 24. Plaintiffs don't point to a basis in the complaint for this claim, and Century Fence didn't have an opportunity to respond to it, so the court declines to consider it.

**B. New claims**

Plaintiffs raise two other issues for the first time in their supplemental briefs. The first issue appears to relate to situations in which an employee works different jobs at different rates of pay. Plaintiffs say that Wis. Admin. Code § DWD 274.03 entitles an employee "to be paid at the rate agreed upon with his employer for each hour worked, unless a higher rate is required by prevailing wage laws." Dkt. 149, at 19. Plaintiffs don't explain what they mean by this, but they provide an example in which they say that an employee should receive an overtime rate based on an employee's rate of pay during first 40 hours of work, even if the job the employee performs after 40 hours of work is paid at a lower rate. But plaintiffs don't explain why they didn't raise this claim sooner, they don't point to a basis for it in the complaint, they don't clearly explain the basis for the claim or the authority for it, and they don't cite any evidence that Century Fence has violated § DWD 274.03 as they are interpreting it. So the court declines to consider that claim as well.

The second new claim is also unclear. That section of plaintiffs' brief is titled, "The Employer Must Pay Time and a Half the Average Straight time Wage for Each Overtime Hour; but Time and a Half the Minimum Rate Required by Davis-Bacon and Prevailing Wage Laws if Higher." Dkt. 149, at 20. Although plaintiffs don't clearly explain the claim, they concede that it's contingent on the court ruling in their favor on the issues whether Wisconsin law and the DBA require employers to include cash fringe payments in an employee's overtime rate. *Id.* at 21. The court has decided those claims in Century Fence's favor, so this claim fails as well.

ORDER

IT IS ORDERED that:

1. Defendant's supplemental motion for partial summary judgment, Dkt. 152, is GRANTED, and plaintiffs' supplemental motion for partial summary judgment, Dkt. 148, is DENIED.

2. The clerk of court is directed to schedule a telephone conference before Magistrate Judge Stephen Crocker for the purpose of setting a new trial date and related deadlines. This case was originally set for a jury trial, but the parties may wish to consider a court trial in light of the technical nature of the damages issues that remain in dispute.

Entered January 13, 2022.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge